Francis J. SCHNEIDER, Jr., et al.,
Plaintiffs,

v.

WILMINGTON TRUST COMPANY, BANK OF DELAWARE and Farmers Bank of the State of Delaware, Defendants.

Court of Chancery of Delaware,
New Castle.

Sept. 12, 1973.

David Roeberg, Sullivan, Potter & Roeberg, Wilmington, for plaintiffs.

Rodney M. Layton and Wendell Fenton, Richards, Layton & Finger, Wilmington, for defendant Wilmington Trust Co.

Charles F. Richards, Jr., Martin I. Lubaroff, and Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, for defendant Farmers Bank of the State of Delaware.

Henry N. Herndon, Jr., and Eduard F. von Wettberg, III, Morris, James, Hitchens & Williams, Wilmington, for defendant Bank of Delaware.

DUFFY, Justice:[*]

Plaintiffs bring this action against Bank of Delaware, Farmers Bank of the State of Delaware and Wilmington Trust Company (defendants) under a usury statute for certain charges made in credit card transactions. Defendants answered and then

---

[*] Sitting by assignment of the Chief Justice pursuant to the provisions of Art. 4, § 13 of the Constitution Del.C.Ann.

moved to dismiss the complaint on the ground that the Court does not have jurisdiction over the subject matter. This is the decision on the motion.

### A.

Plaintiffs allege that they are representative of a class of persons who hold credit cards of Bank Americard (issued by Bank of Delaware) and Master Charge (issued by Farmers Bank and Wilmington Trust Company, respectively). They charge defendants with collecting interest at rates in excess of that allowed under the Delaware usury statute, 6 Del.C. § 2301, at least prior to June 25, 1971.[1] Specifically, they claim under 6 Del.C. § 2304(b), which provides:

"When a rate of interest for the loan or use of money exceeding that established by law has been reserved or contracted for, the borrower or debtor shall not be required to pay the creditor the excess over the lawful rate and the borrower or debtor may, at his option, retain and deduct the excess from the amount of any debt. In all cases where any borrower or debtor has paid the whole debt or sum loaned, together with interest exceeding the lawful rate, the borrower or debtor, or his personal representative, may recover in an action against the person who has taken or received the debt and interest, or his personal representative, the sum of 3 times the amount of interest collected on any loan in excess of that permitted by law or the sum of $500, whichever is greater, if such action is brought within one year after the time of such payment."

Plaintiffs seek statutory damages for those members of the class who have liquidated their balances in credit card accounts maintained with defendants and an accounting for those members of the class who owe balances in such accounts (so that they may deduct excess interest paid from the amounts owed).

The sole question presented by the motion is whether equity has subject matter jurisdiction over the controversy.

### B.

■ The basis of all equity jurisdiction is the absence of an adequate remedy of law and that foundation is codified by statute in this State. 10 Del.C. § 342.[2] Hughes Tool Company v. Fawcett Publications, Inc., Del.Ch., 297 A.2d 428 (1972); Broughton v. Warren, Del.Ch., 281 A.2d 625 (1971); Glanding v. Industrial Trust Company, 28 Del. 499, 45 A.2d 553 (1956); duPont v. duPont, 32 Del.Ch. 413, 85 A.2d 724 (1952); Delaware Trust Company v. McCune, 32 Del.Ch. 113, 80 A.2d 507 (1951); and Woolley on Delaware Practice, § 56.

Equity jurisdiction is asserted on three grounds: first, plaintiffs are entitled to an accounting; second, the suit presents a controversy upon which an action for a declaratory judgment is permissible in equity under 10 Del.C. § 6501; and third, this is a valid class action cognizable under Chancery Rule 23.

### C.

I first consider the claim for an accounting. This is sought, as I understand it, so that each member of the class may deduct excess interest paid from any balance which he owes.

---

1. On that date the retail installment sales provisions of 6 Del.C. § 4301, et seq. were amended to make the finance charges stated therein applicable to banks operating credit card systems under which card holders purchase goods and services from participating merchants.

2. 10 Del.C. § 342 provides:
   "The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."

Preliminarily, it should be said that under established American law usury is based entirely upon statutory regulation; hence, it is a species of prohibited conduct (*malum prohibitum*). Missouri K. and T. Trust Co. v. Krumseig, 172 U.S. 351, 19 S. Ct. 179, 43 L.Ed. 474 (1899); 55 Am.Jur., Usury, § 3. And the general rule is that when a statute both creates a new right and prescribes a remedy, the latter is exclusive. Pollard v. Baily, 20 Wall. 520, 87 U.S. 520, 22 L.Ed. 376 (1874); 1 C.J.S. Actions § 6(b). Equity will ordinarily not intervene to provide an alternative remedy. 30 C.J.S. Equity § 23(b)(3); 1 C.J.S. Actions § 6(d).

Plaintiffs, however, contend that the complaint puts in issue matters of "complexity" which require an accounting to settle them. They say that before they can avail themselves of the remedy under the statute (that is, withhold the amount of excess interest paid), they must have a determination by this Court of the actual amount of usurious interest paid during each period in question.

The fact that plaintiffs have characterized the demand for relief as an accounting does not vest the Court with jurisdiction. We must look to the substance of what plaintiffs seek and measure that against the traditional jurisdictional standards in an action for an accounting. See Hughes Tool Co. v. Fawcett Publications, Inc., supra.

Under Delaware law an accounting lies only when there are mutual accounts between parties, when a fiduciary relationship exists and defendant has a duty to account, or when the accounts are all on one side but there are circumstances of great complication. Cheese Shop International, Inc. v. Steele, Del.Ch., 303 A.2d 689 (1973); Pan American Trade & I Corp. v. Commercial Metals Co., 33 Del.Ch. 425, 94 A.2d 700 (1953); 1 C.J.S. Accounting § 18.

Plaintiffs do not allege mutual accounts nor any fiduciary relationship with defendants. They contend that their credit card accounts with defendants involve circumstances of great complication. On the present record, this is simply not persuasive. The calculations necessary to determine interest legally due on plaintiffs' accounts during the period in question and the amount of overcharge (if any) involve relatively simple arithmetic: how much was owed? how much interest was charged? It seems to me that the right to be in equity on an accounting theory must be tested by the claim of each individual. And, as I have said, the calculations as to a single account are not shown to be complex. The fact that many individual accounts must be considered may give rise to equitable jurisdiction on a different basis (see the discussion below) but it does not create an "accounting" action for jurisdictional purposes.

In sum, the calculations presented by the case do not rise to a level of complexity which warrants the interposition of the equitable remedy of accounting.

### D.

Plaintiffs' next contention is that those members of the alleged class who have outstanding balances on their credit card accounts are entitled to a judgment, declaring under 10 Del.C. § 6501 that the finance charges are excessive and ordering an adjustment of each account accordingly.

The Court of Chancery has jurisdiction over a declaratory judgment action if there is an underlying basis for equity jurisdiction, measured by traditional standards. In the arguments advanced here by plaintiffs, the crucial question is whether the issues raised would be presented in a legal or in an equitable action if coercive relief were being sought. Compare Diebold Computer Leasing, Inc. v. Commercial Credit Corporation, Del.Sup., 267 A.2d 586 (1970).

Plaintiffs assert that the ultimate coercive relief is injunctive. They posit a situation in which members of the class with

outstanding balances pay their accounts in full less excessive interest and defendants, rather than bringing an action against them for the balances, merely report adversely on their respective credit ratings. Then, say plaintiffs, they would be forced to seek injunctive relief to remove their names from unfavorable credit reports.

This scenario might entitle plaintiffs to injunctive relief, if it comes to pass; but the existence of an "actual controversy" is required under the declaratory judgment statute. And the Supreme Court has made clear what that means: (1) it must be a controversy involving rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; and (4) the issue involved in the controversy must be ripe for judicial determination. Rollins International, Inc. v. International Hydronics Corp., Del.Sup., 303 A.2d 660 (1973); see also Marshall v. Hill, Del.Super., 8 Terry 478, 93 A.2d 524 (1952).

The basic purpose of the Declaratory Judgment Act is to enable courts to adjudicate a controversy prior to the time when a remedy is traditionally available, Diebold Computer Leasing, Inc. v. Commercial Credit Corp., supra, but this does not mean that the Court may give an advisory opinion or adjudicate a hypothetical issue. See Rollins International, Inc. v. International Hydronics Corp., supra.

Assuming that the first three criteria of *Rollins* are met, there is nothing in the record to indicate that defendants are about to take or have threatened to take the action which plaintiffs describe. In short, there is no indication that such an issue is ripe for judicial determination. For this reason, I conclude that plaintiffs have not demonstrated their right to a declaratory judgment in equity.

### E.

I turn now to plaintiffs' contention that the claim for statutory money damages falls under equity jurisdiction because it states a class action cognizable under and governed by Chancery Rule 23 (which is substantially the same as Rule 23 of the Federal Rules of Civil Procedure). To the extent that plaintiffs contend that equity jurisdiction arises merely because this suit is brought on behalf of many persons, their position is without merit.

It is well settled that Rule 23 neither extends nor limits Chancery jurisdiction, Chancery Rule 82; see also Delaware Bankers Association v. Division of Revenue, Del.Ch., 298 A.2d 352 (1972). And, historically, the "class bill" (the predecessor of the class action) was not an independent basis of jurisdiction. Rather, it was traditionally no more than an exception to the general rule that all persons materially interested in the subject matter of a suit must be made parties thereto. Bay Newfoundland Co. v. Wilson & Co., 24 Del.Ch. 288, 11 A.2d 278 (1940); Story's Equity Pleading (3 ed.), §§ 76a, 95. It was created out of the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights. Montgomery Ward & Co. v. Langer, 8 Cir., 168 F.2d 182 (1948); 3B Moore's Federal Practice (2 ed.), § 23.02[1]. And although it was often said that a class bill was permitted to prevent a multiplicity of suits, the multiplicity to be prevented were suits in equity and an independent basis of equity jurisdiction was present. See Bay Newfoundland Co. v. Wilson & Co., supra; Keller v. Wilson & Co., 22 Del.Ch. 175, 194 A. 45 (1937); and the discussion in *Story*, supra, beginning at § 97.

■ Plaintiffs contend, however, that prevention of a multiplicity of suits alone provides an independent basis for equity jurisdiction. Equity will take jurisdiction to prevent a multiplicity of suits; that is:

"Where a number of persons have separate and individual claims and rights against the same party, A., but all arise from some common cause, are governed by the same rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone . . . ." Pomeroy's Equity Jurisprudence (5 ed.), § 245.

■ Thus, in a proper case, equity will take jurisdiction to adjudicate purely legal rights, and it is the very "multiplicity of suits" to be prevented which constitutes the inadequacy of legal methods and remedies which is the ultimate basis of equity jurisdiction. *Pomeroy,* supra, § 243. Defendants contend that this jurisdiction is necessarily limited to cases in which plaintiffs enjoy a "common title" or "community of right" or "community of interest in the subject matter." There is authority for that view, cf. Tribbette v. Illinois Central R. Co., 70 Miss. 182, 12 So. 32 (1892) and 75 A.L.R. 1444, but it seems to me that a community of interests in questions of law and fact involved in the general controversy can and should (in a proper case) support equity jurisdiction. See the discussion in *Pomeroy,* supra, § 269, and First State Bank v. Chicago, R. I. & P. R. Co., 8 Cir., 63 F.2d 585 (1933); Baily v. Tillinghast, 6 Cir., 99 Fed. 801 (1900); Smith v. Bank of New England, 69 N.H. 254, 45 A. 1082 (1898). And, in any event, the community of interest approach to jurisdiction has been applied and approved in Delaware. Wise v. Delaware Steeplechase & Race Ass'n, Del.Sup., 45 A.2d 547 (1945); Field v. Layton & Layton, 16 Del.Ch. 135, 141 A. 818 (1928).

It seems to me that this view of jurisdiction is consistent with the basic premise that it is the inadequacy of legal remedy caused by a multiplicity of suits, not any particular interest in the subject matter, which permits the interposition of equitable relief. *Pomeroy,* supra, § 269a. If equity is to grant adequate relief unavailable at law, it should not be limited by arbitrary requirements.

I turn now to the question of whether this is a case in which Chancery should assume jurisdiction to avoid a multiplicity of actions at law. I conclude that there is a community of interests in questions of law and fact involved among persons who allegedly paid more or who were billed for more interest than the statute, 6 Del.C. § 2304(b), permitted: All have a common interest in how the statute has been applied and/or how it should have been applied to their respective balances. Defendants cite a number of cases in which courts, while recognizing the basic doctrine, have declined to apply it. I can only say that I am not persuaded that, as a matter of law, the Court should do likewise here. Nor can I say on the present record that Chancery will take jurisdiction.

■ Before accepting jurisdiction on the premise of avoiding a multiplicity of actions at law, the Court must be satisfied that the threat of multiplicity is imminent. It is, of course, only the real danger of a multiplicity of suits which will prompt equity to act. Delaware Bankers Ass'n v. Division of Revenue, supra; Wise v. Delaware Steeplechase & Race Ass'n, supra; Equitable Guarantee & Trust Co. v. Donahoe, 8 Del.Ch. 422, 45 A. 583 (1900); *Pomeroy,* supra, § 251¾. In short, there must be a practical necessity for the exercise of jurisdiction and the Court must be satisfied that multiplicity will (in fact) be avoided, or substantially so (that is, separate cases will not remain for trial). Compare the discussion in Hale v. Allinson, 188 U.S. 56, 23 S.Ct. 244, 47 L.Ed. 380 (1903).

■ It seems to me that, for practical purposes, the Court should not attempt to apply the common law tests formulated in the cases but should, rather, regard the terms of Rule 23 as a codification of those requirements. That was the approach of Chancellor Harrington in applying old Chancery Rule 113 to *Bay Newfoundland* and I adopt it.

■ With Court approval the parties agreed to defer a ruling on plaintiffs' motion for an order to determine whether the action may be maintained as a class action under Rule 23. A hearing will be held on that motion and if the requisites of the Rule are met, I conclude that the Court should accept jurisdiction to avoid a multiplicity of suits at law.