**HEATHERGREEN COMMONS CONDO-MINIUM ASSOCIATION, Jonathan Church, Frank T. & Catherine Wharton and L & N Consultants, Inc., Plaintiffs,**

**v.**

**Ralph PAUL, Rosalind Paul, Robert Smagala and Rosalind Investments, L.P., Defendants.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Nov. 13, 1985.

Decided: Dec. 4, 1985.

Rodman Ward, Jr., and David J. Margules of Skadden, Arps, Slate, Meagher & Flom, Wilmington, and Howard A. Handelman and Peter J. Walsh, of Bayard, Handelman & Murdoch, P.A., Wilmington, for plaintiffs.

Paul P. Welsh of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants.

## OPINION

JACOBS, Vice-Chancellor.

This action for injunctive relief grows out of a dispute over whether a certain tract of land, owned by the defendants [1] (Parcel A) is burdened by certain deed restrictions and negative easements running in favor of the plaintiffs, who are owners of condominium units located on the adjoining tract ("Parcel B").[2] Such restrictions and easements, if applicable to the defendants, would prohibit their use of Parcel A for various specified purposes, including the development of a hotel, motel, or restaurant.

In their complaint, filed on July 24, 1985, the plaintiffs alleged that the defendants had announced plans to build a motel and restaurant on Parcel A and in furtherance of that intent, had applied for a zoning

---

1. The defendants are Rosalind Investments, L.P. ("Rosalind"), a limited partnership which owns Parcel A, Ralph and Rosalind Paul, the general partners of Rosalind, and Robert Smagala, an employee of the Pauls. Parcel A is located on Shipley Road near Philadelphia Pike in Wilmington, Delaware.

2. Plaintiffs are condominium unit owners in "Heathergreen Commons" a 48–unit condominium complex, located on Parcel B. Additional plaintiffs are the Heathergreen Commons Condominium Association and L & N Consultants, Inc. ("L & N"), a subsidiary of Lomas & Nettleton. L & N sold Parcel A to defendant Rosalind in 1984.

variance and a modification of the applicable subdivision plan. Claiming that the defendants' actions imminently threatened to violate the restrictions and negative easements, the plaintiffs sought an injunction prohibiting the defendants from violating such restrictions and easements. Believing that the zoning variance applications would be heard and granted possibly by the end of that month, the plaintiffs applied for, and were granted, leave to take expedited discovery.

On July 17, 1985, one week after they filed their original answer and counterclaim, the defendants withdrew their applications for a zoning variance and to amend the subdivision plan. Defendants' stated reason for so doing was that any further action on their part should be deferred so long as the underlying legality of such actions was under challenge.

On August 13, 1985 the defendants filed an amended answer and counterclaim, in which they alleged that in 1984 Rosalind bought (and therefore now owns) Parcel A free and clear of the easements and restrictions alleged in the plaintiffs' complaint. In their second counterclaim,[3] the defendants affirmatively sought a declaratory judgment to the effect that they own Parcel A free and clear of all such easements and restrictions.

The defendants' self-imposed moratorium upon their plans to build a motel-restaurant set in motion as between the parties a somewhat remarkable about-face of litigating positions. Initially the plaintiffs sought an injunction. At present the plaintiffs no longer seek relief of any kind, and indeed would have the entire lawsuit dismissed. They claim that the defendants' moratorium has removed any threat of imminent harm, and with it, any need for injunctive relief. The defendants, on the other hand, claim that the plaintiffs have unjustifiably cast a cloud upon defendants' title to Parcel A. The defendants insist that unless the Court grants them prompt declaratory relief, they will be unable to exercise their ownership rights—for which they claim to have bargained and paid—to use their land free and clear of any restrictions and property interests running in favor of the plaintiffs. The defendants now want to prosecute their case vigorously; the plaintiffs insist that there is no longer any case to be prosecuted.

What brings this matter to a head procedurally is that the plaintiffs have moved to dismiss the defendants' counterclaim. The defendants resist the plaintiffs' motion, but they, in turn, have moved to dismiss the complaint. This is the decision on both dismissal motions.

## I. *The Plaintiffs' Contentions*

The plaintiffs' basic proposition is that this Court lacks subject matter jurisidiction to entertain the counterclaim, and that alternatively, as a matter of discretion, the Court should decline to exercise such jurisdiction as it may have. In specific terms, the plaintiffs argue that the counterclaim does not present a controversy that is "justiciable" or "ripe" for adjudication. They contend that any declaratory relief would be hypothetical and advisory, and would not terminate the controversy. Plaintiffs also argue that in any event, even if the controversy were ripe for adjudication, it should not be heard in this court, but rather in the Superior Court where defendants have an adequate legal remedy.[4]

---

**3.** Defendants' first counterclaim for damages, was based upon a theory akin to malicious prosecution. That counterclaim is no longer before the Court, because the defendants have since voluntarily dismissed it without prejudice. Consequently, the plaintiffs' dismissal motion, and this opinion, concern only the defendants' second counterclaim.

**4.** Initially, the plaintiffs argued a third ground for dismissal—that defendants failed to join all of the condominium unit owners as persons needed for a just adjudication under Chancery Rule 19. The parties have subsequently agreed, and plaintiffs' counsel has advised the Court, that the Heathergreen Commons Condominium Association will be appearing on behalf of all of the unit owners, thereby mooting plaintiffs' Rule 19 dismissal argument.

■ By structuring their argument in this fashion, what the plaintiffs have done is blend together under a single heading ("jurisdiction") two separate concepts—subject matter jurisdiction and "ripeness"—which analytically are quite distinct and which, because of their distinctness, require separate treatment. "Subject matter jurisdiction" speaks to the power of a court to adjudicate a particular kind of controversy. In the case of the Court of Chancery, that power is limited to matters and causes in equity where there is no sufficient remedy by common law or statute, and to all other matters where jurisdiction is specifically conferred by statute. *See* 10 *Del. C.* §§ 341, 342. "Ripeness" or "justiciability," on the other hand, speaks to whether a given dispute lends itself to adjudication by any court. "Ripeness" is a shorthand reference to the concept that a controversy will not be adjudicated unless it involves truly adverse interests and actual rights. Controversies that are hypothetical and would result in only an advisory opinion, are not justiciable. *Ackerman v. Stemerman,* Del.Supr., 201 A.2d 173 (1964); *Schneider v. Wilmington Trust Co.,* Del. Ch., 310 A.2d 897, 902, *rev'd on other grounds,* Del.Supr., 320 A.2d 709 (1973); *Stabler v. Ramsay,* Del.Ch., 88 A.2d 546, *aff'd,* Del.Supr., 89 A.2d 544 (1952); *see also, FMC Corporation v. R.P. Scherer Corporation,* Del.Ch., 545 F.Supp. 318 (1982).

Viewed from that perspective, the plaintiffs' argument is, in reality, two pronged: (1) the controversy is not ripe for adjudication by any court, but (2) even if it were ripe, this Court does not have subject matter jurisdiction. Those contentions are now addressed.

## II. *Ripeness*

The plaintiffs argue that this controversy is not ripe, because any declaratory judg-ment rendered at this stage would be speculative, hypothetical, and advisory, since no matter how this Court might rule, it could not resolve the real dispute between the parties, and therefore, could not give effective relief. Plaintiffs reason thusly: even if the defendants were declared to own Parcel A free and clear of the disputed restrictions, they would still remain unable to build a motel-restaurant, unless they first obtained a zoning variance from the New Castle County Board of Adjustment and a modification of the subdivision plan from the County Planning Board. Both procedures would involve significant administrative hurdles, and would be accomplished, if at all, over the plaintiffs' vigorous opposition. Should one or both of the County administrative proceedings be resolved against the defendants, the counterclaim would be rendered moot and no decision by this Court would be necessary. That being the case, a decision by this Court on the counterclaim would be "hypothetical" and "advisory," unless the defendants would have first obtained the requisite zoning variance and subdivision plan modification. In this case those preconditions might never occur, because the defendants voluntarily withdrew their application for those administrative approvals. It therefore follows, plaintiffs argue, that the counterclaim must be dismissed either as a matter of law [5] or, at the very least, in the sound exercise of discretion under 10 *Del. C.* § 6506.[6]

The difficulty with plaintiffs' argument is that it rests upon a contrived definition of the "controversy." Plaintiffs have chosen to define the controversy as being whether or not the defendants should be permitted to build a motel-restaurant on Parcel A. If that, in fact, were the issue, plaintiffs' position might stand on a sound-

---

**5.** Citing *Ackerman v. Stemerman, supra,* 201 A.2d 173, and *FMC Corp. v. R.P. Scherer Corp,* 545 F.Supp. 318 (D.Del.1982), for the proposition that the declaratory judgment and injunctive processes of the courts cannot be used as a means to elicit advisory opinions.

**6.** 10 *Del.C.* § 6506 provides:

"The court may refuse to enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, will not terminate the uncertainty or controversy giving rise to the proceeding."

er footing. *Compare Wardrop Co. v. Fairfield Gardens, Inc.*, 237 App.Div. 605, 606, 262 N.Y.S. 95, 97 (N.Y.1933). However, that is not the controversy framed either by the complaint or by the counterclaim. Rather, the controversy, as defendants correctly point out, is whether they own Parcel A free and clear of the restrictions and negative easements under which the plaintiffs claim enforceable rights. The plaintiffs allege in their complaint that Parcel A is burdened by such restrictions. The defendants respond in their counterclaim that in 1984 they bought and paid for Parcel A as a fee simple purchase, free and clear of any such restrictions and without any notice thereof.

As thus viewed, the controversy between the parties is direct, clear and adverse, and a judicial resolution of that issue at this stage would be neither hypothetical nor advisory. The issue, simply put, is whether the defendants received the title they claim to have paid for when Rosalind purchased Parcel A from plaintiff L & N in 1984. That issue is clearly justiciable. To illustrate by way of a hypothetical, suppose that in 1984, after signing a contract to sell Parcel A in fee simple, L & N had tendered not the deed actually delivered to Rosalind in this case, but rather a deed that contained all of the restrictions alleged in the complaint and disputed in the counterclaim. The resulting controversy would have been justiciable at that point, because the defendants would have been entitled immediately to commence an action for specific performance, to compel L & N to deliver a deed containing none of the disputed restrictions.

The dispute in this case is identical in substance to the above-described hypothetical example. In this case, the defendants claim that plaintiff L & N delivered to defendant Rosalind a deed purporting to convey "clean" title, but after the closing took the position—formalized by the filing of this lawsuit—that its grant of title was encumbered by negative easements and restrictions.[7] While different in form, this case presents the identical issue, namely whether the purchaser has acquired fee ownership rights in land that are unrestricted or whether such ownership rights are fettered by land use restrictions. That dispute is present and ongoing. Despite their litigating position that this case should be dismissed, the plaintiffs continue to adhere to their legal position that the restrictions are binding on the defendants, and have advised the Court that they reserve their right to litigate that position at a later time. *Compare Schneider v. Wilmington Trust Co., supra*, 310 A.2d at 902.

By its very nature such a dispute calls for prompt judicial resolution. To hold that the defendants should be denied their day in court until after they have first successfully prosecuted zoning variance and subdivision plan modification applications before the requisite County administrative bodies, would produce impracticable and unequitable results. A necessary premise of prosecuting such administrative proceedings is that the defendants already possess an underlying property right (subject only to permission by the County authorities) to use their property to build a motel-restaurant. Here, however, that premise is at best uncertain, and at worst it may turn out to be incorrect. By definition defendants' underlying property right to use Parcel A to build a motel-restaurant would be under legal challenge throughout the entire pendency of the County proceedings. And if thereafter a court were to resolve the property right question against

7. The restrictions upon which the plaintiffs rely include a set of restrictions that were drafted and distributed to Heathergreen Commons Condominium owners, but which were never recorded. Despite the non-recordation, plaintiffs contend that the restrictions are binding upon the defendants, because defendants purchased Parcel A with specific knowledge of those restrictions. In their answer and counterclaim, the defendants deny such knowledge, and indeed deny ever having been informed of the disputed restrictions until shortly before this lawsuit was filed—almost one year after they purchased Parcel A.

the defendants, the County proceedings will have turned out to be a costly and futile exercise. Plaintiffs have cited no authority that would require placing a landowner in such a position.[8] Equity and common sense dictate that where, as here, a landowner in the defendants' position claims property rights that have been rendered uncertain due to a *bona fide* legal challenge, the landowner is entitled to have that uncertainty judicially resolved.

Bolstering this conclusion is the fact that the motel-restaurant use is not the only land use that the disputed restrictions would proscribe. If applicable, those restrictions would prohibit approximately 20 specific uses. Even if the County authorities were to deny the defendants permission to build a motel-restaurant, defendants' right to devote Parcel A to the 19 or so remaining allegedly prohibited uses would still remain uncertain. And under plaintiffs' theory, there would be no way that the defendants' uncertainty as to those uses could ever be judicially resolved. But most important, and as the defendants correctly point out, as the owners of Parcel A they would be entitled at any time to simply abandon their development plans and put the land up for sale. In that event the defendants would clearly be entitled to an immediate judicial determination of plaintiffs' challenge to the scope of their title. Otherwise, the defendants could never be certain of what they would be selling. Since the defendants would be obligated to disclose plaintiffs' adverse claims to any

prospective buyer, unless declaratory relief were available, the defendants would be forced into the position of "selling a lawsuit," with predictable adverse impact upon the marketability of their land.

The import of the foregoing discussion is to underscore the point that plaintiffs have defined the instant controversy too narrowly. Again, the controversy is *not* whether the defendants shall be permitted to erect a motel or restaurant on Parcel A. Rather, it involves the scope of the underlying property ownership rights which plaintiff L & N sold to defendant Rosalind, and which Rosalind bought from L & N, in 1984. Thus viewed, the controversy is justiciable under traditional equity principles, even without reference to the Declaratory Judgment Act. *See, Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). *A fortiori*, it is justiciable under the Declaratory Judgment Act. 10 *Del.C.* § 6501 *et seq. See Faulkner v. City of Keene*, N.H.Supr., 85 N.H. 147, 155 A. 195, 199–200 (1931). Under the more restrictive predecessor to the present Act,[9] the legislative purpose was "to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance [the] stage at which a matter is traditionally justiciable." *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, Del.Supr., 267 A.2d 586, 591–92 (1970). Under the present Declaratory Judgment Act, the General Assembly

8. *Wardrop, Inc. v. Fairfield Gardens, Inc.*, 237 App.Div. 605, 262 N.Y.S. 95 (N.Y.1933), which plaintiffs cite, does not aid their position. In *Wardrop* the court dismissed an action seeking a declaratory judgment that a restrictive covenant (which by its terms did not prohibit the building of a hospital) would permit the erection of a "modern high class properly conducted hospital for human beings which shall not treat contagious diseases." The court found that no controversy existed, because none of the parties joined as defendants had taken an adverse position. Here, in contrast, the positions of the plaintiffs and defendants could not be more adverse. Moreover, the restrictions in this case (unlike those in *Wardrop*) would clearly prohibit the plaintiffs' proposed use.

9. The pre–1981 version of the Declaratory Judgment Act authorized specified courts to grant declaratory relief "in cases of actual controversy." 10 *Del.C.* § 6501. Section 6501 of the amended Act contains no reference to an "actual controversy" requirement. Instead it authorizes courts of record to grant declaratory relief "[e]xcept when the Constitution of this State provides otherwise." The 1981 amendment did not, of course, abolish the requirement, inherent in all justiciable controversies, that real and adverse interests must be present. *See Wilmington Trust Co. v. Barron*, Del.Supr., 470 A.2d 257, 262 (1983).

explicitly articulated that the statutory purpose as being:

"... to settle and to afford *relief from uncertainty* and insecurity *with respect to rights*, status and other legal relations; and is to be liberally construed and administered." 10 *Del. C.* § 6512 (emphasis added).

In furtherance of that purpose, Section 6502 explicitly provides that:

"Any person interested under a deed ... may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status or other legal relations thereunder."

This case clearly fits both the letter and the spirit of the Declaratory Judgment Act. By their complaint and by the position they have taken in this lawsuit, the plaintiffs have created an "uncertainty" with respect to the defendants' "rights, status and other legal relations" as owners of Parcel A. *See Wilgus v. Salt Pond Inv. Co.*, Del.Ch., 498 A.2d 151 (1985) (action to set aside property conveyance operates as constructive notice to any purchaser *pendente lite*). A purpose of the Act is to afford relief from such uncertainty. Moreover, the defendants are persons "interested under a deed" and by their pleadings the parties have raised a question of "construction or validity arising under the instrument." The Act entitles the defendants to have that question judicially determined.

To conclude on this point, the issues presented by the defendants' counterclaim are clearly justiciable, and plaintiffs' contrary arguments are without merit.

### III. *Subject Matter Jurisdiction*

Although the counterclaim may be justiciable, whether this Court has jurisdiction to entertain it yet remains to be decided. The plaintiffs argue that the counterclaim finds no support under any independent heading of equity jurisdiction, and that, moreover, the availability of declaratory relief in the Superior Court affords defendants an adequate remedy at law. The defendants controvert both propositions, arguing that subject matter jurisdiction is maintainable on several alternative grounds, and also that they have no remedy, let alone an adequate remedy, at law. Those contentions are now considered.

A fundamental principle governing the conduct of litigation in the Court of Chancery is that it has no jurisdiction over any matter as to which the party seeking relief has an adequate remedy at law. 10 *Del. C.* § 342; *Glanding v. Industrial Trust Co.*, Del.Supr., 45 A.2d 553 (1945); *Hughes Tool Company v. Fawcett Publications, Inc.*, Del.Supr., 315 A.2d 577 (1974). Invoking that principle, the plaintiffs insist that the availability of a declaratory judgment action in the Superior Court constitutes an adequate legal remedy.

Plaintiffs' argument is misconceived. The Declaratory Judgment Act did not increase or enlarge the jurisdiction of any of the courts which were legislatively empowered to grant declaratory relief, nor did the Act change the jurisdictional relationship between the Superior Court and the Court of Chancery. *Suplee v. Eckert*, Del.Ch., 120 A.2d 718, 720 (1956). Jurisdiction under the Declaratory Judgment Act hinges upon whether law or equity would independently have jurisdiction, without reference to the Act, if the subject matter of the controversy should develop to a later stage. *Diebold Computer Leasing, Inc. v. Commercial Credit Corporation, supra*, 267 A.2d at 591; *Western Air Lines, Inc. v. Allegheny Airlines, Inc.*, Del.Ch., 313 A.2d 145, 149 (1973); *Jefferson Chemical Co. v. Mobay Chemical Co.*, Del.Ch., 253 A.2d 512, 514 (1969). These authorities make it clear that: (1) the Court of Chancery has jurisdiction over a declaratory judgment action only if there exists an underlying basis for equity jurisdiction measured by traditional standards, and (2) the Superior Court would have jurisdiction in a declaratory judgment action only if it would otherwise have subject matter jurisdiction in the absence of the declaratory judgment action.

643

The inquiry as to adequate legal remedy thus becomes: what remedy, if any, would be available to the defendants in the Superior Court with respect to these counterclaims? Where, as here, the controversy involves the scope of ownership rights in land, Superior Court would have jurisdiction only if the defendants could maintain their counterclaim within the framework of an ejectment or, possibly, a trespass action. Both actions would fall within the common law jurisdictional purview of the Superior Court. *Suplee v. Eckert, supra,* 120 A.2d at 719–720 (ejectment); *Nebeker v. Berg,* Del.Ch., 115 A. 310 (1921) (trespass).

In this case neither common law action would be available to defendants. To maintain an ejectment action, the defendants would have to be out of possession. Here they are in possession. *Suplee v. Eckert, supra,* 120 A.2d at 720; *State v. Williams,* Del.Ch., C.A. No. 868, Sussex, Hartnett, V.C. (June 8, 1981); 10 *Del. C.* § 6701. To maintain a trespass action, the defendants would have to show that the plaintiffs made an unauthorized entry upon their land or otherwise physically interfered with their right to possession. *Hanson v. Carroll,* Conn.Sup.Ct.Err., 133 Conn. 505, 52 A.2d 700 (1947); *State v. Tullo,* Me.Supr., 366 A.2d 843 (1976); *Passwaters v. Warren,* 1 Del.Cas. 37 (1794); Restatement (Second) of Torts § 158 (1965). No such claim is advanced here. It would therefore follow that with respect to their counterclaim, the defendants have no remedy, let alone an adequate remedy, in the Superior Court.

Apart from the question of legal remedy, the plaintiffs also contend that defendants have failed to establish any independent, traditional basis for equity jurisdiction. Plaintiffs reason as follows: because the defendants seek no independent equitable relief such as an injunction, jurisdiction would exist only if the nature of the defendants' claim or cause of action is equitable. The only cause of action alleged in the counterclaim is that the plaintiffs, by asserting the applicability of the restrictions, have created a cloud on the defendants' title. Normally actions to determine title to land are actions at law, cognizable in the Superior Court. While plaintiffs concede that equity will entertain a bill to quiet title, they assert that this is true only where the "cloud" involves a challenge to an instrument that is facially valid but which, in fact, is void by reason of circumstances that must be proved by extrinsic evidence. This case, plaintiffs say, involves the precise opposite facts: here the instrument that creates the "cloud" (a set of deed restrictions that L & N created in 1981 and distributed to buyers of Heathergreen Commons condominium units) is facially invalid due to plaintiffs' failure to record it. And here it is the validity, not the invalidity, of that instrument that must be established by extrinsic evidence (*i.e.,* evidence that defendants actually knew of the restrictions at the time they purchased Parcel A). Since this is not a true "quiet title" case, this Court lacks jurisdiction to entertain it.

The plaintiffs' jurisdictional argument labors under several infirmities. Even under plaintiffs' concept of what constitutes a cloud on title actionable in equity, (*i.e.,* a facially valid instrument whose invalidity in fact must be proved by extrinsic evidence), this case appears to qualify. The deed from L & N conveying Parcel A to Rosalind is facially valid. Plaintiffs' claim must be that the deed is invalid in fact, at least to the extent that it does not contain the disputed land use restrictions. Those restrictions, which would operate to limit the scope of title conveyed by the deed, can be proved only by extrinsic evidence.

But, in addition, the plaintiffs' concept of a cloud on title actionable in equity is itself legally too narrow. The proper test for what constitutes a cloud on title sufficient to invoke equity jurisdiction has been articulated by the Delaware Supreme Court in *Wilkes v. State,* Del.Supr., 265 A.2d 421, 424 (1970) as follows:

"It is clear from the *Murphy* and *Suplee* opinions and the authority quoted therein that if an alleged cloud involves disputes which can be resolved only by extrinsic evidence lying outside the record, or if the invalidity of a recorded instrument must be established by matters outside the record, then equity has jurisdiction to try the cause.

We affirm *Suplee* and *Murphy* as containing time-honored rules of property law."

Unquestionably this case involves a dispute "which can be resolved only by extrinsic evidence lying outside the record." Therefore, the jurisdictional requirements of *Wilkes v. State* are satisfied.

Second, equity would also have jurisdiction over the counterclaim under the theory that the issues raised in the counterclaim would arise in an equitable action if coercive relief were being sought at a later stage. In *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, Del. Supr., 267 A.2d 586, 591 (1970) the Supreme Court stated the test to be as follows:

"Jurisdiction under the Declaratory Judgment Act is based on the question of whether law or equity traditionally would have jurisdiction of the subject matter if the controversy should develop to a later stage; *of whether the issues raised would be presented in a legal or equitable action if coercive relief were being sought.*" (emphasis added).

*Accord, Jefferson Chemical Co. v. Mobay Chemical Co.*, *supra*, 253 A.2d at 512; *Western Airlines, Inc. v. Allegheny Airlines, Inc.*, *supra*, 313 A.2d at 149.

In *Diebold*, the Supreme Court held that a declaratory judgment action to determine the rights of the parties under a contract could be brought in equity, because in that case a declaratory judgment rendered by the Superior Court might well require a return to Chancery for enforcement, and "ultimate coercive relief would be injunctive" (267 A.2d at 591). Here too, the ultimate coercive relief would be equitable, as shown by the procedural history of this case. Should the defendants decide once again to proceed with their development plans and to seek a zoning variance, the plaintiffs would be back in this Court seeking injunctive relief, precisely as they did when they began this action.[10]

In this context, it is instructive to observe that for almost four decades, this Court has entertained actions seeking a declaratory judgment as to the validity, applicability or proper interpretation of land use restrictions contained in a deed or a subdivision plant. As far as the parties' research discloses, all such cases have been adjudicated in the Court of Chancery. *See, e.g., Chambers v. Centerville Tract No. 2 Maintenance Corporation*, Del.Ch., C.A. No. 7144, Hartnett, V.C. (May 30, 1984); *DiSabatino v. Wawaset Park Management Corp.*, Del. Ch., C.A. No. 6563, Hartnett, V.C. (May 3, 1983), *rev'd in part on other grounds*, Del.Supr., Nos. 205 and 208 (1983); *Council of Unit Owners v. Realty Growth Investors*, Del.Ch., 436 A.2d 1268 (1981), *modified on other grounds*, Del. Supr., 453 A.2d 450 (1982); *Alliegro v. Home Owners of Edgewood Hills*, Del.Ch., 122 A.2d 910 (1956); *Cashvan v. Darling*, Del.Ch., 107 A.2d 896 (1954); *Welshire, Inc. v. Harbison*, Del.Supr., 91 A.2d 404 (1952); *Kennett Park Development Corporation v. Westover Hills*, Del.Ch., 58 A.2d 405 (1948), *aff'd sub nom., Gammons v. Kennett Park Development Corp.*, Del. Supr., 61 A.2d 391 (1948). Although no jurisdictional objection appears to have been raised in the above-cited cases (for

---

10. This case can arguably be viewed as also involving the ultimate coercive relief of reformation. To the extent that the unrecorded restriction relied upon by plaintiffs are not contained in the 1984 deed from L & N to Rosalind, plaintiffs' position must necessarily be that the deed erroneously omitted a material qualification or exception to the title being conveyed. In substance, a lawsuit seeking to enforce the unrecorded restrictions would be tantamount to an action by the plaintiff L & N to reform its own deed. The counterclaim would be the defendants' procedural vehicle for resisting such relief.

which reason they cannot be cited as direct holdings on the jurisdictional point), nonetheless those cases lend persuasive support to the proposition that declaratory judgment actions involving the validity, applicability, or interpretation of land use restrictions are normally cognizable in this Court. Such cases, by their very nature, do not normally involve fact patterns that lend themselves to actions in ejectment or trespass, and, hence are not adequately remediable at law. Moreover, the ultimate coercive relief inherent in such cases would appear to be injunctive, either to enforce or to prohibit the enforcement of the disputed restrictions. Thus, on that basis as well this Court has jurisdiction over the counterclaim.

Finally, and in all events, this Court has jurisdiction based on the doctrine that once equity has jurisdiction over a cause, it will deal with the entire controversy, even if in so doing it must necessarily afford relief that is not purely equitable. *Park Oil, Inc. v. Getty Refining & Marketing Co.*, Del. Supr., 407 A.2d 533, 535 (1979); *Tull v. Turek*, Del.Supr., 147 A.2d 658, 664 (1958). If this Court originally had jurisdiction over the claim alleged in the complaint, such jurisdiction would also extend over the counterclaim. The issues presented by the counterclaim are the mirror image of those alleged in the complaint. Indeed, they are so identical that the counterclaim would constitute a compulsory counterclaim under Chancery Court Rule 13(a), over which the Court has ancillary jurisdiction. *See Harris v. Steinem*, 571 F.2d 119, 121–122 (2d Cir.1978); 6 C. Wright and A. Miller, Federal Practice and Procedure §§ 1409, 1410 (1971).

In response, plaintiffs argue that: (1) this Court never had jurisdiction to hear the complaint, because the controversy was premised upon defendant Ralph Paul's statement that approval of the subdivision revision was a foregone conclusion, which premise was later proved false during discovery; and (2) even if jurisdiction existed *ab initio*, it was "destroyed as a result of the later withdrawal of the applications" with the result that jurisdiction did not exist at the time the counterclaim was filed.

Neither argument is tenable. By filing a complaint praying for injunctive relief, the plaintiffs properly invoked this Court's equitable jurisdiction. Plaintiffs filed their complaint in the good faith belief that at that time an emergency existed. No one argues the contrary. Clearly, then, jurisdiction over the complaint existed *ab initio*. *See Western Airlines, Inc. v. Allegheny Airlines, Inc., supra*, 313 A.2d at 149. Plaintiffs' argument that this Court's jurisdiction can later be divested by post-complaint developments has been previously made in other cases and rejected by the Delaware Supreme Court. *Diebold, supra*, 267 A.2d at 590–591 (jurisdiction is ascertained as of the time of the filing of the complaint and is unaffected by post-complaint developments); *Tull v. Turek, supra*, 147 A.2d at 664–665 (where Chancery Court had jurisdiction at the time the complaint was filed, that jurisdiction remains "even though circumstances have arisen after the filing of the complaint which make the equitable relief prayed for impracticable."). While it is true that subsequent events may moot a cause of action, such events do not operate to divest a court of its jurisdiction once that jurisdiction attaches. If accepted, plaintiffs' position would leave defendants with no remedy—legal or equitable—to remove what it contends to be a serious cloud on its title, a cloud which persists because the plaintiffs continue to adhere to their position that the defendants are subject to the disputed restrictions.

\* \* \* \* \* \*

For the foregoing reasons this Court has jurisdiction to entertain this controversy between the parties. That controversy is presently ripe for determination in an action for declaratory relief. Therefore, the plaintiffs' motion to dismiss the counterclaim must be denied.

The defendants have moved to dismiss the complaint, based entirely upon plaintiffs' argument (which, in this context, defendants treat as a concession) that jurisdiction no longer exists over the complaint. Having successfully argued that jurisdiction cannot be divested for purposes of resisting dismissal of their counterclaim, defendants cannot now be permitted to assert the contrary proposition for purposes of urging dismissal of their adversaries' complaint. To permit the defendants to "have it both ways" would deprive the plaintiffs of any procedural vehicle for affirmatively seeking relief in their favor in this lawsuit. The defendants' motion to dismiss the complaint must, therefore, also be denied.

IT IS SO ORDERED.