# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Final Report:  December 28, 2023
Date Submitted:  December 20, 2023

Julia Bettina Klein, Esquire
Klein LLC
225 West 14th Street, Suite 100
Wilmington, Delaware  19801

Sean A. Meluney, Esquire
William M. Alleman, Esquire
Meluney Alleman & Spence LLC
1143 Savannah Road
Lewes, Delaware  19958

    RE:   *Jane Clevenger v. Insight Building Co., LLC*,
           C.A. No. 2023-0359-BWD

Dear Counsel:

This final report addresses respondent Insight Building Co., LLC's motion to dismiss petitioner Jane Clevenger's Amended Verified Petition (the "Petition") under Court of Chancery Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons explained below, I recommend that the Court grant the motion and dismiss the Petition for lack of subject matter jurisdiction, with leave to transfer to the Superior Court pursuant to 10 *Del. C.* § 1902.

## I.    BACKGROUND[1]

On August 3, 2021, petitioner Jane Clevenger ("Petitioner") and respondent

Insight Building Co., LLC ("Respondent" or "Insight") entered into an agreement

pursuant to which Petitioner agreed to purchase, and Insight agreed to sell, a new

construction home in Milton, Delaware (the "Construction Contract").  Am. Verified

Pet. [hereinafter, "Pet."], Ex. A, Dkt. 11.  Paragraph 18 of the Construction Contract,

entitled "Dispute Resolution," provides that:

> Any dispute, controversy, or claim arising out of or relating to any of
> the terms or provisions in this Agreement shall be submitted to
> mandatory final and binding arbitration, subject to the terms of this
> Paragraph.  No party may have recourse to the jurisdiction of any court
> unless any disagreement or contest has first been submitted to
> arbitration in the manner described below . . . .

Pet., Ex. A § 18 (the "Dispute Resolution Provision").  In addition to setting forth

procedures governing arbitration, Paragraph 18 requires that:

> The Parties shall maintain the confidentiality of all aspects of this
> Agreement (including information respecting any arbitration entered
> into between the Parties).  As such, each party acknowledges and agrees
> that it shall not, without the other party's prior written permission in
> each instance, disclose the Confidential Information of such other party

---

[1] The following facts are taken from the Petition and the documents incorporated by reference therein, including the Construction Contract (defined below) attached as Exhibit A to the Petition.  *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

> to any third party (other than as required to fulfill its obligations hereunder and/or as may be required by any applicable law, rule or regulation (such as a subpoena or other valid discovery request). The term "Confidential Information" shall not include information that is either: (i) in the public domain; or (ii) independently discoverable without violating any confidentiality or other obligation of any kind to any individual or entity. To the extent that Confidential Information is required to be provided to an affiliate or other third party to effectuate the terms hereof, such third party must first agree to be bound by the same confidentiality provisions as set forth herein.

*Id.* § 18(i) (the "NDA").

According to the Petition, in the weeks before the Construction Contract was signed, "Insight refused to let [Petitioner] engage her own real estate agent; tried to pressure her into buying too big of a house; discouraged her from retaining counsel . . . ; [and] manufactured a persistent sense of impending doom and urgency . . . ." Pet. at 3; *see also id.* ¶ 52 (alleging Insight "took advantage of [Petitioner]'s known vulnerabilities" and "discouraged her from seeking professional advice"). During that period, "Insight Homes never mentioned or discussed with [Petitioner] that she would be required to sign an NDA and a [Dispute Resolution Provision] in connection with the Contract to build her Home"; rather, "[t]he only terms [Petitioner] ever discussed with Insight Homes were terms concerning the construction of her Home: purchase price, model, lot number, timing, upgrades, and

the like . . . ." *Id.* ¶¶ 26, 46.[2]  Petitioner alleges she "signed the [Construction] Contract under duress when it was emailed to her for her electronic signature, not realizing that certain inconspicuous provisions of the contract deprived her of her day in court and of the opportunity to present any breach of the [Construction] Contract on the merits after discovery and with the assistance of counsel." *Id.* ¶ 47; *see also id.* ¶ 26 (alleging Petitioner "had no idea of what an arbitration was and the limited avenues for a review of arbitration decisions by the court," and "had no reason to expect, nor did she understand, that this was, in effect, what she was doing by signing the [Construction] Contract").

After closing, Petitioner raised with Insight concerns about poor air quality,[3] standing water, an infestation of frogs, and holes in the foundation of her new home, among other issues.  *Id.* ¶ 32.

---

[2] Petitioner alleges those terms were memorialized in a Customer Priceout Worksheet, attached as Exhibit B to the Petition.  *See* Pet. ¶ 49; *id.*, Ex. B.

[3] The Petition emphasizes that the air quality in Petitioner's home is particularly troublesome given Petitioner's respiratory ailments.  *See* Pet. at 2 ("[C]limate is irreverent, especially when provoked, and when the weather ravaged parts of Colorado with an extraordinary wildfire in 2021 it also ravaged Ms. Clevenger's lungs.  Her respiratory system, already debilitated by asthma, imploded, and Plaintiff resolved to retire in friendlier and calmer climes by the Delaware beaches."); *id.* ¶ 36 ("Ms. Clevenger, who several times had to seek medical care and receive treatment for bronchitis and sinus infections and had become increasingly anxious and depressed about the ongoing nightmare of dealing with the issues at her home and Insight Homes representatives, has lost any confidence in Defendant's ability to do anything right.").

On March 24, 2023, Petitioner initiated this action through the filing of a Verified Petition. Dkt. 1. On August 1, 2023, Petitioner filed the operative Petition, which alleges five counts. Count I seeks reformation of the Construction Contract to remove the Dispute Resolution Provision, including the NDA therein. Pet. ¶ 45. Count II seeks a declaratory judgment that "(a) the NDA is void for lack of consideration; (b) void and unenforceable because it was obtained through inequitable conduct; (c) unenforceable as a matter of public policy . . . ; [and] (d) unenforceable as unconscionable . . . ." *Id.* ¶ 59. Count III seeks a declaratory judgment that the Dispute Resolution Provision "is unenforceable (a) as unconscionable . . . and (b) because arbitration is strictly a matter of consent and [Petitioner], even though she signed the [Construction] Contract and initialed each page electronically, did not knowingly consent to the [Dispute Resolution Provision] . . . ." *Id.* ¶ 65. Count IV alleges a claim for breach of contract premised on Insight "supplying defective product and unworkmanship like services," and Count V alleges a claim for negligent and intentional infliction of emotional distress. *Id.* ¶ 72.

## II.   ANALYSIS

Respondent has moved to dismiss the Petition pursuant to Court of Chancery Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.[4]

"The Court of Chancery will grant a Rule 12(b)(1) motion to dismiss 'if it appears from the record that the Court does not have jurisdiction over the claim.'" *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017) (citation omitted). "The Court of Chancery is a court of limited jurisdiction." *Id.* Title 10, Section 342 of the Delaware Code states that "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State." 10 *Del. C.* § 342. This Court "maintains subject matter jurisdiction 'only when (1) the

---

[4] On August 11, 2023, Insight filed its Opening Brief in Support of its Motion to Dismiss the Amended Petition or to Strike Certain Allegations Contained In It. Resp't.'s Op. Br. In Supp. Of Its Mot. To Dismiss The Am. Pet. Or To Strike Certain Allegations Contained In It [hereinafter, "OB"], Dkt.12. On October 3, 2023, Petitioner filed her Answering Brief in Support of Opposition to Respondent's Opening Brief in Support of its Motion to Dismiss the Amended Petition or to Strike Certain Allegations Contained In It. Pet'r.'s Ans. Br. In Supp. Of Opp'n To Resp't.'s Op. Br. In Supp. Of Its Mot. To Dismiss The Am. Pet. Or To Strike Certain Allegations Contained In It [hereinafter, "AB"], Dkt. 15. On October 18, 2023, Insight filed its Reply Brief in Further Support of its Motion to Dismiss the Amended Petition or to Strike Certain Allegations Contained In It. Resp't.'s Reply Br. In Further Supp. Of Its Mot. To Dismiss The Am. Pet. Or To Strike Certain Allegations Contained In It [hereinafter, "RB"], Dkt. 17. I heard oral argument on December 20, 2023. Dkt. 19.

complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'" *Smith v. Scott*, 2021 WL 1592463, at \*14 (Del. Ch. Apr. 23, 2021) (citation omitted).

Petitioner's sole jurisdictional hook[5] is a request for reformation, which is an equitable remedy.[6] But "Chancery jurisdiction is not conferred by the incantation of magic words[,]" and simply asking for an equitable remedy is not an "open sesame" to equity jurisdiction. *Yu*, 2017 WL 2889515, at \*3 (footnote omitted) (first quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987); then *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991)). Rather, "'[i]f a realistic evaluation [of the pleadings] leads to the conclusion that an adequate

---

[5] Petitioner concedes that Counts II and III of the Petition, which seek declaratory judgments, do not provide an independent basis for subject matter jurisdiction. *See Heathergreen Commons Condo. Ass'n v. Paul*, 503 A.2d 636, 642 (Del. Ch. 1985) ("[T]he Court of Chancery has jurisdiction over a declaratory judgment action only if there exists an underlying basis for equity jurisdiction measured by traditional standards . . . .").

[6] The parties agree that Count I seeking reformation is not subject to arbitration because it presents a threshold issue of enforceability. *See* OB at 15-20; AB at 11-12; RB at 1-2; *see also, e.g.*, *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at \*9 (Del. Ch. Mar. 30, 2020) (applying "state contract law to determine whether [the plaintiff] consented to arbitration"), *aff'd*, 243 A.3d 441 (Del.); *Carder v. Carl M. Freeman Cmties., LLC*, 2009 WL 106510, at \*3 (Del. Ch. Jan. 5, 2009) ("[W]hether parties agree to arbitrate is generally one for the courts to decide and not arbitrators." (citation and internal question marks omitted)).

remedy is available, this court, in conformity with the command of Section 342 of Title 10 of the Delaware Code, will not accept jurisdiction over the matter.'" *Id.* at *3 (quoting *McMahon*, 532 A.2d at 603).

The Petition here seeks to "reform" the Construction Contract to remove the Dispute Resolution Provision, and the NDA therein, based on "unilateral mistake and inequitable conduct." Pet. ¶ 45. But, as Insight argues, the "reformation" Petitioner seeks—deleting the offending provision—would have the same effect as a declaratory judgment determining that such provision is invalid or otherwise unenforceable.[7] Thus, "[w]hile the [Petition] includes the 'magic words' of certain equitable remedies in an attempt to invoke equity jurisdiction, the Superior Court can grant a full, fair, and complete remedy" through a declaratory judgment—the same relief sought in Counts II and III. *Yu*, 2017 WL 2889515, at *4-5 (concluding the Court of Chancery lacked subject matter jurisdiction over a complaint seeking reformation, among other equitable remedies, where the plaintiff's "best remedy" was available at law).

---

[7] *See* OB at 27 (first citing *ISS Facility Servs., Inc. v. JanCo FS 2, LLC*, 2023 WL 4096014, at *2 (Del. Ch. June 20, 2023) (finding the Court lacked subject matter jurisdiction over a request for specific performance because a declaratory judgment, available at law, would provide a sufficient remedy); then *Hillsboro Energy, LLC v. Secure Energy, Inc.*, 2008 WL 4561227, at *3 (Del. Ch. Oct. 3, 2008) (same)).

Even if a declaratory judgment would provide a less than "full, fair, and complete remedy," this Court lacks jurisdiction over this action for a separate reason—the Petition fails to adequately plead entitlement to reformation. "Reformation is an equitable remedy which emanates from the maxim that equity treats that as done which ought to have been done." *Greenberg v. BCV Social, LLC*, 2023 WL 8167825, at *1 (Del. Ch. Nov. 20, 2023) (internal quotation marks omitted) (quoting *Obsidian Fin. Gp., LLC v. Identity Theft Guard Sols., Inc.*, 2021 WL 1578201, at *10 (Del. Ch. Apr. 22, 2021)). "Reformation does not . . . provide the Court 'equitable license . . . to write a new contract at the invitation of a party who is unsatisfied with his or her side of the bargain; rather, it permits the Court to reform a written contract that was intended to memorialize, but fails to comport with, the parties' prior agreement.'" *Id.* (ellipses in original) (citation omitted). A party seeking reformation must plead the following:

> (i) that the parties reached a definite agreement before executing the final contract; (ii) that the final contract failed to incorporate the terms of the agreement; (iii) that the parties were similarly mistaken or that [one] knew of [another's] mistake and remained silent; and (iv) the precise mistake the parties made.

*AECOM v. SCCI Nat'l Hldgs., Inc.*, 2023 WL 6294985, at *6 (Del. Ch. Sept. 27, 2023) (alterations in original) (footnotes and internal quotation marks omitted). The circumstances constituting the mistake must be pled with particularity in accordance

with Court of Chancery Rule 9(b). *See Joyce v. RCN Corp.*, 2003 WL 21517864, at *3 (Del. Ch. July 1, 2003) ("Rule 9(b) requires that 'in all averments of . . . mistake, the circumstances constituting . . . [the] mistake shall be stated with particularity.'" (alteration and ellipses in original)).

The Petition fails to adequately plead these elements. First, the Petition fails to allege facts supporting an inference that the parties reached a specific prior agreement that the Construction Contract would not include a dispute resolution procedure. The Petition alleges in conclusory fashion that "[t]here was a specific understanding that the construction contract would contain only the terms pursuant to which the Home would be constructed," which "did not include the [Dispute Resolution Provision] or the NDA." Pet. ¶ 50; *see also id*., Ex. B. Yet, the Petition also alleges that "Insight[] *never mentioned or discussed*" dispute resolution or confidentiality, such that Petitioner "had no reason to anticipate or believe" that the Construction Contract would address those issues. *Id*. ¶¶ 46-47 (emphasis added); *see also id.* ¶ 26 ("The only terms [Petitioner] ever discussed with Insight Homes were terms concerning the construction of her Home . . . ."). In other words, the Petition expressly alleges the *absence* of a prior agreement concerning dispute resolution or confidentiality. And without such an agreement, the Petition does not plead a conceivable basis for reformation. *See In re TIBCO Software Inc. S'holders*

*Litig.*, 2015 WL 6155894, at *13 (Del. Ch. Oct. 20, 2015) (explaining that "[r]eformation requires an antecedent agreement" (citation and internal quotation marks omitted)); *see also AECOM*, 2023 WL 6294985, at *7 (dismissing reformation count where plaintiff's theory was not premised on "any *actual agreement* between the parties" (emphasis added)); *Obsidian Fin. Gp.*, 2021 WL 1578201, at *10 (concluding a "reformation claim fail[ed] as a matter of law" where the petition was "bereft of particularized facts detailing a 'specific prior understanding' as to the terms it s[ought] to reform"); *Richard B. Gamberg 2007 Fam. Tr. v. United Rest. Gp., L.P.*, 2018 WL 566417, at *6 (Del. Ch. Jan. 26, 2018) (concluding plaintiff failed to adequately plead entitlement to reformation where it did not "offer any facts or arguments to explain what 'specific prior contractual understanding' should govern" (alterations in original) (citations and footnotes omitted)).

Second, the Petition fails to allege facts supporting an inference that Insight knew Petitioner was "mistaken" about the inclusion of the Dispute Resolution Provision in the Construction Contract, or that Insight remained silent in the face of such "mistake." Aside from conclusory allegations that Insight discouraged

Petitioner from retaining counsel[8] and "took advantage of [her] known vulnerabilities,"[9] the Petition provides no factual basis to infer that Insight knew Petitioner did not agree to the Dispute Resolution Provision and yet remained silent. To the contrary, the facts alleged in the Petition—that Petitioner electronically signed the Construction Contract and initialed every page, including the page on which the Dispute Resolution Provision appears—compel the opposite inference.[10]

---

[8] *But see* Pet., Ex. A § 11(c) ("The Purchaser has the right . . . to retain an attorney of the Purchaser's choice to represent the Purchaser at settlement.").

[9] Pet. ¶¶ 52-54; *see also id.* ¶ 24 (claiming Insight tried to "upsell" and "intimidate" Petitioner into executing the Construction Contract); *id.* ¶ 53 ("At no time relevant hereto did Insight Homes point out to [Petitioner] that the [C]onstruction Contract contained a waiver of her right to seek redress in the judicial system or that she agreed to an NDA for no consideration."); AB at 9 (claiming Insight "actively discouraged [Petitioner] from seeking counsel").

At oral argument, Petitioner's counsel suggested that Insight and Petitioner stood in a trust relationship, but the Petition does not allege that Insight, Petitioner's contractual counterparty, owed fiduciary duties to Petitioner.

[10] Under Delaware law, "[w]here [a] putative contract is in the form of a signed writing, that document generally offers the most powerful and persuasive evidence of the parties' intent to be bound." *Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209, 1230 (Del. 2018) (citation omitted); *see also, e.g.*, *Chemours*, 2020 WL 1527783, at *10 ("Delaware law views . . . a signature as 'the most powerful and persuasive evidence' of [a party's] intent to be bound by the [agreement], and, consequently, its consent to arbitration." (emphasis omitted) (citation omitted)). The Petition alleges no facts from which the Court could reasonably infer that, despite Petitioner signing, and initialing every page of, the Construction Contract, Insight knew she did not mean to agree to certain terms therein.

Because the Petition fails to adequately allege Petitioner's entitlement to the equitable remedy of reformation, I recommend that the Petition be dismissed for lack of subject matter jurisdiction.[11]

## III.   CONCLUSION

For the reasons explained above, I recommend that the Petition be dismissed for lack of subject matter jurisdiction, with leave to transfer to the Superior Court pursuant to 10 *Del. C.* § 1902.  This is a final report pursuant to Court of Chancery Rule 144(d)(1).[12]

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

cc:   All counsel of record (by File & ServeXpress)

---

[11] In light of the recommendations herein, Insight's motion to strike certain allegations in the Petition is moot.

[12] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").