**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-3940

M & M STONE CO.,
                                        Appellant

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL
PROTECTION; *RAYDELLE BERGER, Executrix of the Estate of Roger Hornberger;
J. SCOTT ROBERTS, Individually and in His Official Capacity; MICHAEL D. HILL,
Individually and in his Official Capacity; KEITH A. LASLOW, Individually and in his
Official Capacity; MARTIN SOKOLOW, Individually and in His Official Capacity;
TELFORD BOROUGH AUTHORITY; MARK D. FOURNIER, Individually and in his
Official Capacity; SPOTTS STEVENS & MCCOY, INC.; RICHARD M.
SCHLOESSER; DELAWARE RIVER BASIN COMMISSION; WILLIAM J.
MUSZYNSKI, Individually and in his official capacity

*(Pursuant to Court Order of 4/19/10)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 07-cv-4784)
District Judge:  Honorable James Knoll Gardner

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2010

Before: BARRY, ROTH, <u>Circuit Judges</u> and HILLMAN* <u>District Judge</u>

---

* Honorable Noel L. Hillman, United States District Judge for the District of New
Jersey, sitting by designation.

(Opinion Filed:  July 28, 2010 )

OPINION

HILLMAN, District Judge

M&M Stone Co. ("M&M") appeals from an order of the District Court dismissing its claims for constitutional and state law violations against the Commonwealth of Pennsylvania, Department of Environmental Protection ("DEP"), the Telford Borough Authority ("TBA"),  Spotts Stevens & McCoy, Inc., and the Delaware River Basin Commission ("DRCB").[1]   The District Court dismissed the claims based on the principles of claim preclusion and issue preclusion.[2]  For the reasons that follow, we will affirm.

## I. Background

---

[1] M&M also filed suit against several employees of these defendants in their individual and official capacities, including DEP employees Roger Hornberger, Scott Roberts, Michael D. Hill, Keith A. Laslow, and Martin Sokolow; TBA General Manager Mark D. Fournier; Spotts Stevens & McCoy, Inc. employee Richard M. Schloesser; and DRCB employee William J. Muszynski.  Mr. Hornberger, a retired employee of the DEP, passed away during the pendency of this appeal, and Raydelle Berger, Mr. Hornberger's executrix, has been substituted as a party pursuant to Fed. R. App. P. 43(a)(1).

[2] We consider the principles of issue preclusion and collateral estoppel to be synonymous.  While the parties use the terms interchangeably, for the sake of clarity and consistency, we use only the former term.  We consider the separate concept of claim preclusion to be a subset of the broader concept of res judicata.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).

M&M owns and operated a quarry in Telford, Pennsylvania for the production of construction and architectural stone. The DEP regulates quarry operations in Pennsylvania, the DRBC regulates ground water withdrawals in the Delaware River's watershed, and the TBA supplies drinking water to residences, businesses, and neighboring communities through several deep ground wells encircling the quarry. Spotts Stevens & McCoy, Inc. is an engineering and consulting firm retained by the TBA to monitor its wells and determine the cause of their dewatering.

The events leading to M&M's suit against these entities, and several of their employees individually and in their official capacities, allegedly began in October 1999, when M&M applied for, and was granted, a permit to deepen its quarry by 50 feet. From that point on, as detailed in M&M's complaint and the District Court's two Opinions, M&M claims that all the defendants conspired to blame M&M's quarry-deepening activities for the dewatering of TBA Well No. 4, when it was actually caused by the TBA's other wells, and to force M&M to pay for an arsenic-free public water supply.

On November 15, 2005, the DEP issued two compliance orders, which required M&M to cease all mining activities and to restore and replace the water supplies affected by its operations. A month later, M&M filed its first formal challenge to the defendants' alleged scheme with an appeal to the Commonwealth of Pennsylvania Environmental

Hearing Board ("EHB").[3] During the pendency of that appeal, on November 14, 2007, M&M filed its case in the District Court seeking injunctive relief, as well as damages for constitutional and state law violations.

The substance and timeline of these parallel proceedings are important to the analysis of whether the District Court properly applied the doctrines of claim and issue preclusion. On January 31, 2008, after a twelve-day long hearing, the EHB found that the DEP orders were "factually supported, reasonable and in accordance with the law in all respects." (A. 723.) The EHB opinion contained 165 findings of fact and spanned over 50 pages. The opinions of ten experts were considered. On February 29, 2008, M&M filed a petition for review before the Commonwealth Court of Pennsylvania.

On September 29, 2008, the District Court granted in part and denied in part the defendants' first motion to dismiss M&M's complaint.[4] Shortly thereafter, the

_____

[3] The DEP issued a third compliance order on March 9, 2006, which was later incorporated into M&M's appeal.

[4] With regard to the claims that were not dismissed, the District Court declined to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), and found M&M's claims not precluded because the defendants did not show that M&M could have raised its constitutional violations claims before the EHB. In the decision on appeal here, the District Court reconsidered its rejection of the *Younger* doctrine, finding that it improperly assigned the burden on the third prong of the test to the defendants. The District Court also determined that M&M could have, and should have, raised its constitutional violations claims before the EHB. In its appeal, M&M focuses on this issue, and argues to the contrary. This point, however, is only relevant to claim preclusion. As discussed below, because we find that the District Court properly determined that all of M&M's claims are barred on the basis of issue preclusion, we will not address this argument.

– 4 –

Commonwealth Court issued its 21-page opinion agreeing with the EHB "in all respects" and affirming its decision.

From December 2008 through July 2009, the Commonwealth Court denied M&M's motion for reconsideration, M&M filed an allocatur petition with the Pennsylvania Supreme Court, and M&M filed an application to supplement its allocatur petition with newly discovered evidence. On September 30, 2009, the District Court dismissed M&M's amended complaint in its entirety, finding that M&M's constitutional violations claims were barred on the basis of claim and issue preclusion, and declining to exercise supplemental jurisdiction over M&M's remaining state law negligence claim. M&M filed its notice of appeal on October 8, 2009.

On December 8, 2009, the Pennsylvania Supreme Court denied M&M's petitions without prejudice to M&M's right to raise after-discovered evidence claims before the EHB. A few weeks later, M&M filed with the EHB a petition to reopen the record and reconsider its opinion. On March 26, 2010, the EHB denied M&M's request to reconsider and open the record. In a 15-page opinion, the EHB explained that not only did M&M fail to properly move to reopen, even if it did, the "new evidence" did not warrant reconsideration or reopening.[5]

In its appeal before us, M&M challenges the District Court's dismissal of its

---

[5] Because briefing had already concluded, we were provided with the March 26, 2010 EHB opinion pursuant to Fed. R. App. P. 28(j).

claims on the basis of claim and issue preclusion.[6]  M&M argues that res judicata principles do not preclude its claims because it could not have brought its claims for constitutional violations before the EHB, and the EHB could not have provided it the relief it could obtain in federal court.  It also argues that preclusion principles do not apply because its constitutional and conspiracy claims (or, the "issues" relating to its constitutional and conspiracy claims) were not actually addressed in the state court proceedings.  M&M further argues that the District Court improperly considered the substance of the EHB and state court proceedings while resolving the motions to dismiss.

## II. Discussion

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over M&M's constitutional violations claims, and supplemental jurisdiction over M&M's claims pursuant to 28 U.S.C. § 1367(a).  We have jurisdiction under 28 U.S.C. § 1291. The general rule is that we exercise plenary review of a decision to apply issue preclusion, or collateral estoppel, and claim preclusion.  *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006) (issue preclusion); *Rider v. Pennsylvania*, 850 F.2d 982, 988-95 (3d Cir. 1988) (claim preclusion).

The principles of issue preclusion and claim preclusion are similar.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (explaining that the

---

[6] M&M does not appeal the District Court's decision to decline supplemental jurisdiction over its state law claim.

– 6 –

doctrine of res judicata "is often analyzed . . . to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion' "). Although these doctrines both govern the preclusive effects of a former adjudication, they are applied in different ways. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.*

The District Court dismissed several of M&M's claims on the basis of claim preclusion, but also found that all of M&M's claims were barred on the basis of issue preclusion. Because the finding that the doctrine of issue preclusion barred M&M from asserting its claims is dispositive of all of M&M's claims, we will first focus our review on that issue.

The purpose of precluding "parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). With regard to issues first presented to a state tribunal, the federal courts have consistently accorded preclusive effect to issues decided by state courts, and, thus "res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity

between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980); *see also* 28 U.S.C. § 1738 (providing that the rulings of state courts "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken").

In determining the preclusive effect of a state court judgment, we apply the rendering state's law of issue preclusion. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985). Thus, whether M&M's suit is precluded turns on the law of Pennsylvania. Under Pennsylvania law, the following conditions must exist before issue preclusion may be invoked:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action;
>
> (2) there was a final judgment on the merits;
>
> (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and
>
> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Shuder v. McDonald's Corp.*, 859 F.2d 266, 273 (3d Cir. 1988).

In a thorough analysis, the District Court found that each element was satisfied. M&M contends, however, that the issues before the EHB and state court are different from the issues raised in its case here, and that it did not have a full and fair opportunity

to litigate those issues in the state proceedings.[7] M&M also argues that the District Court should have never considered issue preclusion at the motion to dismiss stage. We do not agree.

With respect to when a court may consider the preclusive effect of a state court judgment, although issue preclusion is an affirmative defense, it may be raised in a motion to dismiss under Federal Civil Procedure Rule 12(b)(6). *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972). In reviewing a Rule 12(b)(6) motion, it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). In the context of deciding a Rule 12(b)(6) motion that raises issue preclusion concerns, and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims. Thus, we have held that a prior judicial opinion constitutes a

---

[7] M&M's argument that the application of issue preclusion violates its Seventh Amendment right to a jury trial is without merit. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 335-36 (1979) (explaining that because "the party against whom estoppel is asserted has litigated questions of fact, and has had the facts determined against him in an earlier proceeding," "there is no further factfinding function for the jury to perform, since the common factual issues have been resolved in the previous action") (citing *Ex parte Peterson,* 253 U.S. 300, 310 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined.")).

public record of which a court may take judicial notice. *Id.* We have also held, however, that a court may do so on a motion to dismiss only to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion. *Id.* "'[A] court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment.'" *Id.* (citation omitted).

Despite M&M's contention that the District Court should have converted the motions to dismiss into ones for summary judgment and allow it additional time to respond, the District Court did not err by not doing so. At the outset of its review of the motions, the District Court took proper judicial notice of the existence of the state administrative and state court opinions. In those opinions, the EHB and Commonwealth Court found that the DEP "cessation orders were reasonable and in accordance with the law in all respects." (A. 723, 861.) The EHB also found that the DEP had "no less restrictive means to restore and replace the lost water supplies," and that the DEP "had no choice but to cease the operation." (A. 716.) Without considering the underlying factual analyses by the EHB and Commonwealth Court for their truth, and instead simply acknowledging the EHB and Commonwealth Court's conclusions, the District Court properly began the issue preclusion analysis. To credit M&M's argument and disallow a court from recognizing the existence of other judicial opinions would thwart a defendant's right to raise issue preclusion in a motion to dismiss, and it would obviate the entire purpose of the doctrine.

With the EHB and Commonwealth Court's findings as a guide, the District Court considered the four elements necessary to satisfy the issue preclusion test. It is undisputable that M&M was a party in the prior adjudication, which resulted in a final judgment on the merits. It is also clear that through the administrative and state court proceedings, M&M was provided with the requisite due process to satisfy the "full and fair opportunity to litigate" requirement. Thus, the District Court properly concluded that three of the four elements had been met.

As for the final prong of the issue preclusion test--whether the issues previously decided are identical to the issues presented in the subsequent action--although M&M contends that its constitutional claims pleaded here present different issues from those raised in the state proceedings, a comparison of the EHB's and Commonwealth Court's conclusions with M&M's claims shows the identity of the issues. In order to prevail on its first count for a substantive due process violation arising from a municipal land use decision, M&M must establish that (1) it has a property interest protected by due process, and (2) the government's deprivation of that property interest "shocks the conscience." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003). The EHB and Commonwealth Court both found that the DEP "cessation orders were reasonable and in accordance with the law in all respects."[8] Because the

---

[8] The EHB specifically addressed M&M's unconstitutional taking claim, finding that M&M "presented no evidence in support of such a claim." (A. 722.)

DEP's conduct has been found to be reasonable, the issue concerning whether the DEP's conduct "shocks the conscience" already has been determined. Indeed, the DEP's actions cannot be both reasonable and "shock the conscience" at the same time. Accordingly, the District Court properly barred this claim.

To prove its second count for an equal protection violation under a "class of one" theory, M&M must prove that (1) the defendants treated it differently from others similarly situated, (2) the defendants did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Again, because the DEP's conduct was already found to be reasonable, the issue concerning the rationality of the DEP's orders has already been determined.[9] The District Court properly barred this claim.

With regard to its claim for a violation of procedural due process, M&M's third count, M&M must prove (1) a deprivation of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty, or property, and (2) that the procedures available did not provide due process of law. *Id.* at 233-34. Even if M&M could show that it was deprived of a property interest, the prior proceedings demonstrate

---

[9] The Commonwealth Court considered M&M's argument that the DEP orders were "an excessive exercise of regulatory authority." (A. 858.) The Commonwealth Court found, "After a thorough review of the evidence supporting the Board's findings and the law upon which their decision was based, we cannot agree with M&M that the Board committed errors of law in not finding that the Department's actions were unreasonable or outside its authority." (A. 861.)

-12-

that it received "notice and opportunity for hearing appropriate to the nature of the case,"
and that the opportunity to be heard was "at a meaningful time." *Cleveland Bd. of Educ.
v. Loudermill*, 470 U.S. 532, 542, 547 (1985). Indeed, the extensive procedural history of
M&M's challenges to the DEP cessation orders, which wound their way through the
administrative courts and up to the Pennsylvania Supreme Court, shows that the due
process it was provided well exceeds the minimum requirements. Thus, we will also
affirm the District Court on the dismissal of this claim.

Finally, to prove its fourth count for First Amendment violations, M&M must
show that its constitutionally protected conduct was a "substantial" or "motivating factor"
in the defendants' actions. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.
274, 287 (1977) (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252,
270-71 n.21 (1977)). If M&M carries this burden, the burden shifts to the defendants to
show "by a preponderance of the evidence that [they] would have reached the same
decision . . . even in the absence of the protected conduct." *Id.* The District Court found
that even if M&M sufficiently engaged in First Amendment activity, and that activity was
a substantial or motivating factor in the defendants' decision to retaliate, the EHB and
Commonwealth Court opinions show that the DEP had "no less restrictive means to
restore and replace the lost water supplies" and that the DEP "had no choice but to cease
the operation." Accordingly, the District Court concluded that the issue of whether the
defendants would have reached the same decision already had been decided by the prior

-13-

adjudication.  We agree, and this claim was properly dismissed.[10]

### III.  Conclusion

The facts and allegations concerning the shut-down of M&M's quarry because of the dewatering of neighboring wells are complex and voluminous.   Nevertheless, having had a full and fair opportunity to litigate those issues, M&M is barred from asking another court to weigh in on the substance of its claims because all the issues presented by M&M here have already been decided by the prior adjudications.  This is precisely the purpose of the issue preclusion doctrine.

Accordingly, we will affirm the order of the District Court.[11]

---

[10] To the extent that M&M's complaint contains a claim that the defendants conspired to violate its constitutional rights, that claim fails.  Without any underlying constitutional violations, M&M cannot maintain a conspiracy claim. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) (explaining that for a conspiracy claim brought pursuant to § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right "under color of law").

[11] Several defendants point out, and we independently recognize, that M&M's complaint could have been dismissed on other legal theories. *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1145 (3d Cir. 1983) ("An appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment.").  Because the application of the issue preclusion doctrine was appropriate, we do not need to discuss those alternative bases for dismissal.  Furthermore, because we find that the doctrine bars all of M&M's claims, we do not need to consider whether some of its claims are also barred by claim preclusion.