# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CENTERVIEW PARTNERS HOLDINGS LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-0767-BWD |
| | ) | |
| DAVID A. HANDLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| DAVID A. HANDLER, | ) | |
| | ) | |
| Counterclaimant and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CENTERVIEW PARTNERS HOLDINGS LP, | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CENTERVIEW PARTNERS ADVISORY HOLDINGS LLC, CENTERVIEW HOLDINGS GP LLC, ROBERT PRUZAN, and BLAIR EFFRON, | ) ) ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION
## GRANTING MOTION TO DISMISS COUNTERCLAIMS

Date Submitted: April 14, 2025
Date Decided: June 20, 2025

Michael A. Barlow, Hayden J. Driscoll, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, DE; OF COUNSEL: Michael B. Carlinsky, Jennifer J. Barrett, Hope D. Skibitsky, Charles H. Sangree, Maheema Haque, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY; *Attorneys for Plaintiff/Counterclaim Defendant Centerview Partners Holdings LP and Third-Party Defendants Centerview Partners Advisory Holdings LLC, Centerview Holdings GP LLC, Robert Pruzan, and Blair Effron.*

Richard I.G. Jones, Jr., Harry W. Shenton, IV, BERGER MCDERMOTT LLP, Wilmington, DE; OF COUNSEL: Christopher J. Clark, Goeffrey H. Coll, P. Pauline Oostdyk, CLARK SMITH VILLAZOR LLP, New York, NY; *Attorneys for Defendant/Counterclaimant and Third-Party Plaintiff David A. Handler.*

**DAVID, V.C.**

In August 2022, David A. Handler ("Handler") and Centerview Partners Holdings LP ("Topco," and with its subsidiaries, "Centerview") initiated two related actions in this Court. In one action, Handler sought an order under 17 *Del. C.* § 17-305 to compel the inspection of Topco's books and records. In a separate plenary action, Centerview sought declarations that Handler was an employee—not a partner—of Centerview, did not own equity in Topco, and alternatively, any equity Handler owned was subject to repurchase.

Vice Chancellor Glasscock stayed the plenary action and bifurcated the books and records action to first determine whether Handler was a partner of Topco with standing to inspect its books and records. After a two-day trial, Vice Chancellor Glasscock issued a detailed Memorandum Opinion, concluding that "the objective contemporaneous evidence demonstrate[d] that Handler and Centerview did not reach an agreement on the essential terms to create a partnership in Topco." *Handler v. Centerview P'rs Hldgs., L.P.*, 2024 WL 1775269, at *10 (Del. Ch. Apr. 24, 2024).

After the Memorandum Opinion was issued, Handler filed amended counterclaims in this plenary action. Those counterclaims are premised on factual allegations that directly contradict Vice Chancellor Glasscock's factual findings in the books and records action. This memorandum opinion rejects Handler's position that the detailed factual findings in that prior proceeding were not "essential" to the

1

Court's ruling, and were instead mere "observations" and "*dicta*." Applying the doctrine of collateral estoppel, the counterclaims are dismissed.

## I.    BACKGROUND

Unless otherwise noted, the following facts are taken from David A. Handler's Second Amended Answer and Verified Counterclaims and Third-Party Claims. *See* Second Am. Answer and Verified Countercls. and Third-Party Claims [hereinafter CC], Dkt. 75.

### A.    A 2008 Letter Governs Handler's Compensation At Centerview.

Centerview is an investment banking and advisory firm. CC ¶¶ 18, 23. Topco manages Centerview Partners Advisory Holdings LLC ("CPAH"), which owns 99% of Centerview Partners LLC ("CP LLC"), Centerview's broker-dealer subsidiary through which it conducts its U.S. advisory business. *Id.* ¶¶ 19, 21, 23. Centerview Holdings GP LLC ("GP LLC") is the general partner of Topco. *Id.* ¶ 122. Centerview's founders, Robert Pruzan and Blair Effron (the "Founders"), are the only limited partners of Topco. *Id.* ¶ 22.

In 2008, Handler, non-party David St. Jean, and another individual joined CP LLC to grow Centerview's technology practice group. *Id.* ¶¶ 26–28. At the time, Centerview and Handler executed a June 16, 2008 offer letter (the "2008 Letter") providing that Handler would receive "35% of revenues [he] generated up to $25 million, 40% of all revenues between $25 to $40 million, and 50% above the $40

2

million threshold," as well as a 6.5% "interest in the terminal value of Centerview upon a liquidity event (sale, IPO etc.)" ("TVIs"). *Id.* ¶¶ 28–29.

> **B.**  **The Parties Renegotiate Handler's Compensation, And Handler Claims To Believe He Is A Topco Partner.**

On multiple occasions beginning in 2010, Handler and the Founders attempted to renegotiate Handler's compensation. *Id.* ¶¶ 34, 36. In September 2012, the Founders proposed a draft limited partnership agreement under which Handler would have become a partner in Topco, but Handler "rejected the proposed [limited partnership agreement] without offering a counterproposal." *Id.* ¶¶ 43–44. Handler later sent the Founders an "addendum" to the 2008 Letter that "addressed [his] annual compensation." *Handler*, 2024 WL 1775269, at *3; *see* CC ¶ 48.

In November 2012, the Founders proposed a term sheet that "included a compensation change for Handler and St. Jean and identified issues the parties would need to negotiate if they ultimately were to reach a written partnership agreement." CC ¶¶ 50–51. The term sheet proposed that Handler's compensation would depend on his contributions relative to the other "senior partners" at Centerview and would include "a collective 14.5% equity grant in Topco" along with "Priority Capital Accounts." *Id.* ¶¶ 52–53.

On November 8, 2012, Handler met with the Founders at the University Club in New York to discuss the term sheet (the "November 8 Meeting"). *Id.* ¶¶ 50, 56.

3

Handler claims he left that meeting believing the parties had reached an oral agreement that he would become a Topco partner. *Id.* ¶¶ 56, 63.

At the end of 2012, Handler was not compensated under the terms of the 2008 Letter. *Id.* ¶ 63. Instead, following the November 8 Meeting, Handler received discretionary compensation that was lower "compared to what he would have been owed under the 2008 Letter," but he claims he did not object because he believed he was being compensated as a Topco partner. *Id.* ¶¶ 61, 65–67, 70–71, 79–80. Centerview also created Priority Capital Accounts for Handler "funded with deferred compensation," and Handler "received Priority Capital Amounts as part of his compensation from 2012 [through] 2015." *Id.* ¶ 81.

On November 19, 2013, the Founders executed a limited partnership agreement for Topco (the "Topco LPA"). *Id.* ¶ 60. Handler never signed or agreed to the Topco LPA, but the Founders "continued to seek to add Handler . . . to the Topco partnership by sending Handler a revised draft limited partnership agreement to sign on May 18, 2014." *Id.* ¶¶ 60–61. Although Handler alleges that the Founders "did not tell [him] that they had executed the [Topco] LPA" or provide a copy of the executed document, the draft limited partnership agreement he received in May 2014 clearly stated that the Founders had executed the Topco LPA. *Id.* ¶ 61.

4

### C. Handler Demands To Inspect Topco's Books And Records, Then Leaves Centerview.

Handler alleges that, in the years leading up to his departure from Centerview, the Founders orchestrated a campaign to undermine his reputation and fostered a hostile work environment. *Id.* ¶¶ 86–106.

On January 2, 2022, Handler emailed the Founders, "assert[ing] that his compensation was 'well below what he was owed pursuant to any standard and the 2008 . . . [L]etter.'" *Id.* ¶ 109.

On May 23, Handler served a books and records demand on Topco, CPAH, and CP LLC (the "Demand"). *Id.* ¶ 113. Centerview rejected the Demand on the basis that Handler was not a Topco partner. *Id.* ¶ 114. On August 1, Handler initiated an action pursuant to 6 *Del. C.* § 17-305 to enforce the Demand (the "Books and Records Action"). *Id.* ¶ 116; *see* Verified Compl., *Handler v. Centerview P'rs Hldgs. L.P.*, C.A. No. 2022-0672-SG (Del. Ch. Aug. 1, 2022).

Handler resigned from Centerview in August 2022. CC ¶ 116.

### D. Vice Chancellor Glasscock Issues A Memorandum Opinion Finding That Handler Was Never A Topco Partner.

On August 29, 2022, Topco initiated this action, seeking a declaratory judgment that Handler "is not and has never been a partner (limited or otherwise) of Topco and . . . owns no equity in" Topco. Verified Compl. ¶ 1, Dkt. 1. On October 4, Handler filed an Answer and Verified Counterclaims and Third-Party Claims,

corrected on October 5 (the "Initial Counterclaims"), asserting several counterclaims premised on the theory that Handler became a partner in Topco under an oral partnership agreement reached at the November 8 Meeting.[1]  *See* Corrected Answer and Verified Countercls. and Third-Party Claims, Dkt. 18 (no substantive corrections to Dkt. 17).

On November 3, Vice Chancellor Glasscock, to whom the actions were assigned, stayed this action "to first determine the validity of Handler's assertion that he is a partner of Topco," a predicate issue for determining his standing in the Books and Records Action.  *Handler*, 2024 WL 1775269, at *7.

The Court held a two-day trial in the Books and Records Action on July 25 and 26, 2023.  *Id.* at *8.  On April 24, 2024, Vice Chancellor Glasscock issued a post-trial memorandum opinion (the "Memorandum Opinion"), concluding that "the objective contemporaneous evidence demonstrates that Handler and Centerview did not reach an agreement on the essential terms to create a partnership in Topco at the November 8[] Meeting."  *Id.* at *10.  Vice Chancellor Glasscock found that at the

---

[1] The Initial Counterclaims alleged "breaches of fiduciary duties, fraud, retaliation, constructive termination, misappropriation, conversion, aiding and abetting breaches of fiduciary duties, breaches of contract, unjust enrichment, and other misconduct by which [Centerview's] managing partners Pruzan and Effron repeatedly and unilaterally deprived their partner Handler of the legal protections and economic interests he bargained for, relied on, and was otherwise entitled to as their partner."  Corrected Answer and Verified Countercls. and Third-Party Claims ¶ 17, Dkt. 18.

November 8 Meeting, "the parties came to an agreement about the terms of Handler's and St. Jean's continued employment at Centerview," but the agreement was not for Handler to become a partner. *Id.* Instead, Handler's compensation "increased" but "remained subject to year-end negotiations with the Founders." *Id.* at *6. Under the parties' modified agreement, "[t]he Founders had discretion to implement compensation principles flexibly, purportedly in a manner that benefited the firm and addressed issues for specific employees." *Id.*

The Memorandum Opinion further found that the trial record (including third-party communications conceding that the Topco partnership agreement was still "not done") "strongly indicate[d] that neither Handler nor St. Jean considered that they had entered an oral partnership agreement." *Id.* at *10.

The Memorandum Opinion concluded that "when Handler left his employment in 2022, he was an employee with certain vested rights in Centerview (to be determined in the Plenary Action) but was not a Topco partner entitled to invoke 6 *Del. C.* § 17-305." *Id.* at *13. Handler did not appeal.

### E.    Procedural History

On October 7, 2024, Handler filed a Second Amended Answer and Verified Counterclaims and Third-Party Claims (the "Counterclaims"). The Counterclaims assert six counts:

- Count One alleges a claim for breach of fiduciary duty against all Defendants;[2]

- Count Two alleges a claim for constructive fraud against CPH LLP, GP LLC, and the Founders;

- Count Three alleges a claim for breach of the 2008 Letter against CPAH;

- Count Four alleges a claim for breach of the implied covenant of good faith and fair dealing against CPH LP, CPAH, and GP LLC;

- Count Five alleges a claim for unjust enrichment against CPH LP, CPAH, and GP LLC; and

- Count Six seeks a declaratory judgment that Handler was constructively terminated from Centerview without cause.[3]

On October 21, Defendants moved to dismiss the Counterclaims (the "Motion to Dismiss"). Dkt. 77.[4] This action was reassigned to me on January 8, 2025. Dkt. 91. The Court heard oral argument on April 14. Dkt. 93.

---

[2] This memorandum opinion refers to Topco, CPAH, GP LLC, and the Founders collectively as "Defendants" for clarity, even though Topco is a plaintiff and counterclaim-defendant, while CPAH, GP LLC, Pruzan, and Effron are third-party defendants.

[3] CC ¶¶ 118–75.

[4] On November 12, 2024, Defendants filed an opening brief in support of the Motion to Dismiss. Countercl. Def. & Third-Party Defs.' Opening Br. in Supp. of Their Mot. to Dismiss [hereinafter OB], Dkt. 82. Handler filed an answering brief in opposition to the Motion to Dismiss on December 19, 2024. Counterclaimant and Third-Party Pl.'s Br. in Opp'n to Countercl. Def. and Third-Party Defs.' Mot. to Dismiss [hereinafter AB], Dkt. 87. Defendants filed a reply brief in further support of the Motion to Dismiss on January 7, 2025. Countercl. Def. and Third-Party Defs.' Reply Br. in Further Supp. of Their Mot. to Dismiss, Dkt. 90.

## II.   ANALYSIS

Defendants have moved to dismiss the Counterclaims under Court of Chancery Rule 12(b)(6).  When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

Among other arguments supporting dismissal, Defendants contend that Counts One through Five of the Counterclaims are barred by the doctrine of collateral estoppel or issue preclusion.  Although "the Court confines its attention to the face of the complaint" at this procedural posture, "strict application of this rule would deprive defendants of the ability to argue for [collateral estoppel or issue] preclusion if, for example, a plaintiff does not plead facts regarding the potentially preclusive litigation or incorporate documents from that litigation into the complaint." *Wal–Mart Stores, Inc. Del. Deriv. Litig.*, 2016 WL 2908344, at *8 (Del. Ch. May 13, 2016) (quoting *White v. Panic*, 793 A.2d 356, 363 (Del. Ch. 2000), *aff'd*, 783 A.2d 543 (Del. 2001)); *see, e.g.*, CC at 35 n.20 (asserting that "[t]he [Memorandum] Opinion is not being incorporated by reference into the Second Amended Counterclaims").  It is "axiomatic that a court must still consider the prior

9

adjudication in order to determine whether issue preclusion bars that plaintiff's claims." *Id.* (quoting *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010)).

As explained below, Counts One through Five of the Counterclaims are barred by collateral estoppel. Count Six is dismissed for lack of subject matter jurisdiction. The Counterclaims are therefore dismissed in their entirety.

## A. Counts One Through Five Are Barred By Collateral Estoppel.

"Collateral estoppel, or issue preclusion, prevents a party 'from relitigating a factual issue that was previously adjudicated.'" *Troy Corp. v. Schoon*, 959 A.2d 1130, 1133 (Del. Ch. 2008) (quoting *Capano v. State*, 889 A.2d 968, 985–86 (Del. 2006)). Under the doctrine of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Glob. Discovery Biosciences Corp. v. Harrington*, 2023 WL 8295946, at *8 (Del. Ch. Dec. 1, 2023) (quoting *Norman v. State*, 976 A.2d 843, 868 (Del. 2009)). "The test for applying the collateral estoppel doctrine requires that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment." *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999). Findings in a books and records proceeding have preclusive effect on a subsequent plenary action. *See Handler v. Centerview P'rs Hldgs., L.P.*, C.A. No. 2022-0672-SG, at

10

101:3–6 (Del. Ch. Mar. 10, 2023) (TRANSCRIPT) ("[W]hat happens in a books and records proceeding doesn't stay in the books and records proceeding. It has *res judicata* effect for other proceedings."); *Troy Corp.*, 959 A.2d at 1132 (concluding that "collateral estoppel applies and warrants dismissal of the counts premised on the previously litigated factual allegations" in a books and records proceeding).

Defendants contend that Handler has already litigated and lost on the factual allegations underlying the Counterclaims. In the Books and Records Action, Vice Chancellor Glasscock was asked to determine whether Handler was a partner of Centerview with standing to inspect the partnership's books and records. Handler argued that the parties' negotiations over his compensation while he worked at Centerview showed the parties formed an oral partnership agreement. After weighing extensive evidence presented at a two-day trial addressing whether Handler was compensated under an oral partnership agreement, the 2008 Letter, or at the Founders' discretion, the Court rejected Handler's position. Instead, the record showed:

- When Handler joined Centerview as an employee of CP LLC in June 2008, the terms of his employment were governed by the 2008 Letter. *Handler*, 2024 WL 1775269, at *2.

- In October 2012, "in an offsite meeting," Handler conveyed to Centerview that he was "focused on changing [his] employment terms under the 2008 Letter." *Id.* at *3. He sent the Founders an "addendum" to the 2008 Letter that would modify his compensation. *Id.*

11

- The parties then discussed Handler's compensation at the November 8 Meeting. The parties did not enter into an oral partnership agreement, as Handler argued. Instead, the Court found that "Handler accomplished his purpose" to negotiate a modification to his compensation under the 2008 Letter. *Id.* at *13.

- After the parties agreed to modify Handler's compensation structure, his "compensation varied, as Handler's compensation remained subject to year-end negotiations with the Founders," and "[t]he Founders had discretion to implement compensation principles flexibly, purportedly in a manner that benefited the firm and addressed issues for specific employees." *Id.* at *6.

- "Handler's Priority Capital Amounts were a part of his annual compensation discussions, which were subject to the Founder[s'] discretion, and not provided by the purported oral partnership agreement." *Id.* at *12.

- After the November 8 Meeting, Handler did not "consider[] that [he] had entered an oral partnership agreement." *Id.* at *10. Instead, he admitted to third parties that he and the Founders were "not done working through the details of" a partnership agreement. *Id.*

- Handler and the Founders continued to discuss a partnership agreement but never executed one. As of March 2013, the 2008 Letter "remained operative, as evidenced in a memorandum detailing the meeting." *Id.* at *5. But, again, Handler's compensation structure under the 2008 Letter had been modified.

Handler raises two arguments in opposition to collateral estoppel. First, Handler contends that the Court's factual findings were not essential to its ruling in the Books and Records Action, dismissing most of the Memorandum Opinion as

12

mere "observations" and "*dicta*."[5]  Vice Chancellor Glasscock's detailed factual findings were not *dicta*;[6] they were essential to—the very basis for—his ultimate holding on standing.  Each of the factual findings summarized above was essential to Vice Chancellor Glasscock's determination that Handler and the Founders never entered into an oral partnership agreement, and Handler therefore was not a partner of Centerview with standing to inspect the partnership's books and records.

Second, Handler argues that the question presented in the Books and Records Action—whether Handler was a partner of Centerview—is "not identical to the issues now being presented in the [Counterclaims]."  AB at 23.  That argument also fails because, as explained below, Counts One through Five are each premised on factual allegations that "are necessarily inconsistent with the previously adjudicated

---

[5] Tr. of 4-14-2025 Oral Args. on Countercl. Def. and Third-Party Defs.' Mots. to Dismiss, at 37:22–24, Dkt. 95 ("There are lots of different observations that the Vice Chancellor made in connection with this opinion . . . ."); *id.* at 40:10–13 ("What I would argue is this, like many of the other observations Vice Chancellor Glasscock made in the opinion, are just that—observations on the evidence . . . ."); *id.* at 49:18–50:15 ("[COUNSEL]: We don't know what Vice Chancellor Glasscock me[an]t by Mr. Handler achieved his goal, because he doesn't say.  You know why?  Because these aren't holdings of the case; this is *dicta* . . . .  THE COURT: It's not *dicta*. . . .  It's not *dicta*.  I mean, there is an entire section of the opinion that I think in fairly significant detail summarizes Vice Chancellor Glasscock's factual findings . . . .  I don't think he is making general observations about the evidence that was put in at trial.  [COUNSEL]:  Your Honor, first of all, let me push back a little bit because *dicta* is a lot more often than general observations.  Right?  *Dicta* is any statement made by the Court not necessary to its finding.").

[6] *See In re MFW S'holders Litig.*, 67 A.3d 496, 521 (Del. Ch. 2013) (explaining that *dicta* includes "judicial statements on issues that would have no effect on the outcome of [the] case") (citations omitted).

13

issues" in the Books and Records Action. *PVP Aston, LLC v. Fin. Structures Ltd.*, 2023 WL 2728775, at \*8 (Del. Super. Ct. Mar. 31, 2023).

### 1. Counts One (Breach Of Fiduciary Duty), Two (Constructive Fraud), And Five (Unjust Enrichment) Are Inconsistent With The Court's Prior Finding That Handler Did Not Believe The Parties Entered Into A Partnership Agreement.

Counts One, Two, and Five are all premised on the allegation that Handler was misled into believing that the parties formed an oral partnership agreement at the November 8 Meeting:

- Count One alleges that all Defendants breached their fiduciary duties to Handler by misleading him into believing that the parties had formed an oral partnership agreement;[7]

- Count Two alleges that Topco, GP LLC, and the Founders committed "constructive fraud" by misleading Handler into believing that the parties had formed an oral partnership agreement and failing to disclose that the Founders had signed a written partnership agreement without him;[8] and

- Count Five alleges that Topco, CPAH, and GP LLC were unjustly enriched by the "experience, connections and labor" Handler provided "under the promise and understanding that [Handler] was a partner in [Topco]."[9]

The factual premise underlying each of these counts—that Handler was misled into believing that the parties had entered into an oral partnership agreement at the November 8 Meeting—directly contradicts Vice Chancellor Glasscock's

---

[7] *See* CC ¶¶ 123, 126.

[8] *Id.* ¶¶ 131–32, 135, 138.

[9] *Id.* ¶ 157.

finding that *Handler did not believe that the parties had formed a partnership. See Handler*, 2024 WL 1775269, at \*10 (explaining that the evidence showed Handler did *not* "consider[] that [he] had entered an oral partnership agreement"). Because Handler did not honestly believe that the parties had entered into a partnership agreement, the Court cannot credit his allegation that he was misled into believing such.

In addition, although Count Two alleges that Topco, GP LLC, and the Founders committed constructive fraud by failing to disclose to Handler that the Founders signed a written partnership agreement without him, the Memorandum Opinion found the opposite—that in May 2014, the Founders sent Handler a draft limited partnership agreement clearly disclosing that "'an agreement of limited partnership was entered into' and that the limited partnership agreement was being sent to Handler because 'the parties hereto desire to enter into this Agreement in connection with the admission of additional limited partners.'" *Id.* at \*5 (citation omitted).

Finally, Handler argues that Count Two is not collaterally estopped because it advances a claim against the Founders, who were not parties to the Books and Records Action. Because "[a] defendant in [a] second lawsuit may properly assert the defense of collateral estoppel to prevent the plaintiff from litigating issues that the plaintiff previously litigated and lost, even though the defendant himself was not

15

a party to the first proceeding," that argument fails.  *Sanders v. Malik*, 711 A.2d 32, 34 (Del. 1998).

Accordingly, Counts One, Two, and Five are precluded under the doctrine of collateral estoppel.[10]

---

[10] Although the crux of Counts One and Two is discussed above, Paragraphs 123, 124, and 132 contain laundry lists of other purported breaches, some too vague to provide Defendants and the Court with adequate notice of the nature of the claim.  For the sake of completeness, any remaining aspects of Counts One and Two are dismissed as well.

As for Count One, assuming (without deciding) that Handler has standing to bring a claim for breach of fiduciary duty against CPAH as CP LLC's manager, the broad waiver of fiduciary duties in CPAH's limited liability company agreement also forecloses the claim. *See* OB, Ex. F § 2.2 ("No Fiduciary Duties.").  "A member or manager of a limited liability company . . . is bound by the limited liability company agreement whether or not the member or manager or assignee executes the limited liability company agreement."  6 *Del. C.* § 18-101(9).

As for Count Two, any additional allegations fail to state a claim for constructive fraud, which requires pleading with particularity "a false representation, usually one of fact, made by the defendant; . . . the plaintiff's action or inaction taken in justifiable reliance upon the representation; and . . . damage to the plaintiff as a result of such reliance," in addition to the existence of a fiduciary or other special relationship. *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).  To the extent Count Two alleges that Defendants omitted to disclose certain information, the Counterclaims fail to adequately allege a duty to speak absent a request for action from Handler. *See Dohmen v. Goodman*, 234 A.3d 1161, 1169 (Del. 2020) ("[D]irector defendants [do] not have a fiduciary duty of disclosure absent a request for stockholder action.").

16

**2. Counts Three (Breach Of Contract), Four (Breach Of The Implied Covenant Of Good Faith And Fair Dealing), And Five (Unjust Enrichment) Are Inconsistent With The Court's Prior Finding That The Parties Modified The 2008 Letter To Make Handler's Compensation Discretionary.**

Counts Three, Four, and Five are all premised on the allegation that the 2008 Letter continued to govern Handler's compensation following the November 8 Meeting:

- Count Three alleges that CPAH breached the 2008 Letter from 2012 through 2021 by failing to pay Handler compensation due under that contract;[11]

- Count Four alleges that Topco, CPAH, and GP LLC breached the implied covenant of good faith and fair dealing inherent in the 2008 Letter by depriving Handler of compensation due under that contract;[12] and

- Count Five alleges that Topco, CPAH, and GP LLC were unjustly enriched by retaining "over $145 million" in funds and "more than $3.8 million in Handler's Priority Capital Account that was deferred compensation owed to" him under the 2008 Letter.[13]

The factual premise underlying each of these counts—that the 2008 Letter continued to govern after the November 8 Meeting—directly contradicts Vice Chancellor Glasscock's finding that the parties agreed to modify the 2008 Letter to change Handler's compensation structure. As the Memorandum Opinion found, at

---

[11] CC ¶ 144.

[12] *Id.* ¶ 153.

[13] *Id.* ¶¶ 158–60.

the November 8 Meeting, Handler "accomplished his purpose" of renegotiating his compensation arrangement in favor of a new structure under which "[t]he Founders had discretion to implement compensation principles flexibly." *Handler*, 2024 WL 1775269, at *6, *13. Handler's attempt to enforce express or implied compensation terms under the 2008 Letter contradicts the Court's ruling that the 2008 Letter was modified to make Handler's compensation discretionary.

To avoid its preclusive effect, Handler cherry-picks three statements in the Memorandum Opinion that, according to Handler, support his interpretation that the 2008 Letter remained in effect after the November 8 Meeting.

First, Handler says that the Memorandum Opinion found the 2008 Letter "remained operative" as of March 2013, several months after the November 8 Meeting. *Id.* at *5; AB at 20. That argument misreads the Memorandum Opinion. Read as a whole, the Memorandum Opinion is clear that at the November 8 Meeting, the parties agreed to modify Handler's compensation structure under the 2008 Letter; thereafter, rather than form an oral partnership, the parties operated under the 2008 Letter *as modified* by Handler's new discretionary compensation arrangement. *Handler*, 2024 WL 1775269, at *5. The Memorandum Opinion did not find that the original 2008 Letter governed Handler's compensation after November 8, 2012.

Second, the Memorandum Opinion notes that Handler "asserted compensation rights provided by the 2008 Letter, instead of the purported oral

18

partnership agreement," at times after the November 8 Meeting. *Id.* at \*13. Handler's reliance on the 2008 Letter belied his position that the parties entered into an oral partnership agreement, but the Memorandum Opinion did not find that the 2008 Letter continued to govern.

Finally, Handler emphasizes the Memorandum Opinion's "conclu[sion] that when Handler left his employment in 2022, he was an employee with certain vested rights in Centerview (*to be determined in the Plenary Action*) but was not a Topco partner." *Id.* (emphasis added). Handler suggests that his Counterclaims seek to determine the vested rights acknowledged in the Memorandum Opinion. As Defendants correctly explain, however, the Memorandum Opinion simply "summarize[d] the Court's finding that Handler's Oral Partnership story was a fiction, while leaving open the possibility that Handler could assert claims in this action that do not contradict the findings of the [Memorandum] Opinion." OB at 28. It did not invite Handler to relitigate his entitlement to compensation by asserting new theories that directly contradict the factual findings therein.

For similar reasons, Count Five's assertion that Defendants were unjustly enriched by retaining amounts in Handler's Priority Capital Account owed under the 2008 Letter contradicts Vice Chancellor Glasscock's finding that Handler's compensation was at the discretion of the Founders. And, to the extent Handler contends that the conduct alleged in any other count deprived him of Priority Capital

19

Amounts and other returns,[14] Vice Chancellor Glasscock's finding that "Handler's Priority Capital Amounts were a part of his annual compensation discussions, which were subject to the Founder's discretion," similarly precludes that theory. *Handler*, 2024 WL 1775269, at *12.

Thus, Counts Three, Four, and any remaining aspects of Count Five also are precluded under the doctrine of collateral estoppel.

## B. Count Six is Dismissed For Lack Of Subject Matter Jurisdiction With Leave To Transfer To Superior Court.

This Court has an "independent obligation to consider whether it has subject matter jurisdiction," even if the parties have not raised the issue. *Naughty Monkey LLC v. Marinemax Ne. LLC*, 2010 WL 5545409, at *3 n.35 (Del. Ch. Dec. 23, 2010). "The Court of Chancery is a court of limited jurisdiction." *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017). Title 10, Section 342 of the Delaware Code states that "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State." 10 *Del. C.* § 342. This Court "maintains subject matter jurisdiction 'only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with

---

[14] CC ¶¶ 126, 132, 138.

jurisdiction by statute.'" *Smith v. Scott*, 2021 WL 1592463, at \*14 (Del. Ch. Apr. 23, 2021) (citation omitted).

As noted above, Counts One through Five of the Counterclaims must be dismissed. Handler's remaining Counterclaim, Count Six, seeks a declaratory judgment that Topco, CPAH, and GP LLC constructively terminated Handler from his position at Centerview by "intentionally harass[ing] and hound[ing] [him] with the intent of driving him from Centerview." CC ¶ 167. In support of that claim, Handler alleges that the Founders "retaliat[ed] against him for calling out Pruzan's repeated discriminatory behavior towards minorities and women at Centerview," including by (1) "misinforming his clients that he was leaving and retiring," (2) "attempting to transition his clients to other partners without informing him," and (3) "trying to force him to agree to a diminished role at the firm." AB at 85; CC ¶¶ 167–71.

Handler's request for declaratory relief does not support equity jurisdiction. *See, e.g.*, *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 591–92 (Del. 1970) (explaining that a request for declaratory relief does not support jurisdiction unless "there is an[] underlying basis for equity jurisdiction"); *Heathergreen Commons Condo. Ass'n v. Paul*, 503 A.2d 636, 642 (Del. Ch. 1985) ("[T]he Court of Chancery has jurisdiction over a declaratory judgment action only if there exists an underlying basis for equity jurisdiction measured by traditional

standards . . . .").  While this Court "is permitted to exercise ancillary jurisdiction under the clean-up doctrine 'to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation,"[15] it declines to do so here, where no other claims remain[16] and Count Six is premised on factual allegations concerning Centerview's work conditions and Handler's departure that are entirely distinct from the controversy over Handler's partnership status that this Court resolved.

## III. CONCLUSION

For the reasons explained above, the Motion to Dismiss is GRANTED. Counts One through Five are DISMISSED.  Count Six is DISMISSED with leave to transfer under 10 *Del. C.* § 1902.

---

[15] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016).

[16] I note that the two claims asserted in Centerview's Verified Complaint—Count I seeking a declaration that Handler is not a partner of Topco, and Count II seeking an alternative declaration that any equity interest in Topco is subject to repurchase—are resolved.